INSURANCE COMPANY *v.* MOSLEY.

1. The declarations of a party himself, to whomsoever made, are competent evidence, when confined strictly to such complaints, expressions, and exclamations as furnish evidence of a *present* existing pain or malady, to prove his condition, ills, pains, and symptoms, whether arising from sickness, or from an injury by accident or violence.   If made to a medical attendant, they are of more weight than if made to another person.
2. So is a declaration made by a deceased person, contemporaneously or nearly so, with a main event by whose consequence it is alleged that he died, as to the cause of that event.   Though generally the declarations must be contemporaneous with the event, yet where there are connecting circumstances, they may, even when made some time afterwards, form a part of the whole *res gestæ.*
3. Where the principal fact is the fact of bodily injury, the *res gestæ* are the statements of the cause made by the injured party almost contemporaneously with the occurrence of the injury, and those relating to the consequences made while the latter subsisted and were in progress.

APPEAL from the Circuit Court for the Northern District of Illinois, the case being this: .

The Travellers' Insurance Company of Chicago insured the life of one Mosley for $5000, in favor of his wife. .

"Within ninety days, after sufficient proof that the assured at any time within twelve months after the date of this policy shall have sustained personal injury, caused by any accident within the meaning of this policy *and the conditions hereunto annexed,* and such *injuries* shall occasion death within three months from the happening thereof."

The policy among other provisos contained this one:

"*Provided always,* That no claim shall be made under this policy by the said assured, in respect of any injury, unless the same shall be caused by *some outward and visible means, of which proof satisfactory to the company* can be furnished, and this in-

surance shall not extend to any injury caused by or arising from natural disease."

Mosley having died within the term for which his life was insured, his wife, who alleged that he had died from personal injury, caused by accident, demanded the $5000 of the company, which they declined to pay. She thereupon brought assumpsit on the policy. The declaration alleged, that on the 21st of July, 1866, the said Mosley "accidentally fell down a pair of stairs and was severely injured thereby, and that he, within three months after the happening of the said accident, to wit, &c., died from the effects of the said accidental fall, and that the death was occasioned by the said injury and accident, and that the defendant had *sufficient* proof of said accident and death ninety days before the commencement of this suit." On a plea of the general issue and a trial before a jury, the main point in question was the cause of the death of Mr. Mosley; the plaintiff contending that it was the consequence of a fall that he met with in going into his back yard on the night between the 18th and 19th of July, 1866, and the defendant, that it was not.

It appeared that Mr. Mosley was in his usual health until that night; that he and Mrs. Mosley had gone to bed; that between 12 and 1 o'clock he got up and went down stairs; that he came up and complained to his wife and son of having had a fall; and that the symptoms were described by him at the time; that he continued ill until Monday, the 22d, when he died. There was testimony, medical and other, given of his mental and bodily condition from the time of the alleged accident up to the time of his death; there was also medical testimony given of his condition after death, and of an examination of the cranium and brain, externally and internally. The plaintiff insisted that the evidence she introduced tended to show that Mr. Mosley died in consequence of the fall before referred to, and the defendant insisted that the evidence introduced by the company tended to show that death was not caused by any fall, but was in consequence of disease, (congestion of the brain.)

Mrs. Mosley testified in her own behalf, that on Wednesday night, the 18th of July, 1866, she and her husband had gone to bed.   Between twelve and one o'clock he got up and went down stairs for the purpose of going out back; she didn't know how long he was gone.   When he came back he said he had fallen down the back stairs and almost killed himself; that he had hit and hurt the back of his head in falling down the stairs which led out back.   She noticed that his voice trembled, and she inquired into the matter at once.   He complained of his head, and appeared faint and vomited; he threw up almost as soon as he got into the room; she got up, and he laid down on the sofa.   He had nothing on but his pataloons and vest; she didn't sleep any more that night, and was up with him all night.   He complained and appeared to be in great pain.   She asked him if she should send for Dr. Webster, who lived near, but he said no; he thought he should be better, and she did not then call the Doctor. On Thursday morning he said he felt bad, and there was a recurrence of fainting.

To all that portion of the testimony of Mrs. Mosley which set forth the declarations of her husband about his falling down the back stairs and almost killing himself and hurting the back part of his head, the defendant's counsel objected, and their objection being overruled, the defendant excepted.

A son of the assured, testified in behalf of the plaintiff, "that he slept in the lower part of the building occupied by his father; that about 12 o'clock of the night before mentioned he saw his father lying with his head on the counter, and asked him what was the matter; he replied that he had fallen down the back stairs and hurt himself very badly." The defendants objected to both the question and answer. An exception to their admission followed.

The same witness testified further, " that on the day after the fall, his father said he felt very badly, and that if he attempted to walk across the room his head became dizzy; on the following day he said he was a little worse, if anything." The admission of this testimony also was excepted to by the defendants.

There was no witness who testified that he saw the deceased fall down stairs; though several did, that there were such back stairs as it was testified that he spoke of falling down.

Verdict and judgment having been given for the plaintiff, and the case being here, the questions as presented by the bill of exceptions were:

1. Whether the court erred in admitting the declarations of the assured as to his bodily injuries and pains?

2. Whether it erred in admitting such declarations to prove that he had fallen down the stairs?

*Mr. Sansum, for the plaintiff in error :*

Without spending time upon the first of the questions presented by a technical division of the bill of exceptions—and a decision on which, adverse to our view of law, does not affect our main objections—we contend that the widow must show—

1st. That her husband died from injuries caused by accident, and,

2d. That the proof thereof was satisfactory to the insurance company.

The insurance is not against death generally, but against death from *accidental* injuries.

1. It is expressly provided that proof *satisfactory* to the company shall be made. *It* is the judge as to what proof shall be satisfactory. This may be a hard agreement, but it is the contract between the parties, and the court will enforce the contract that the parties have made. The company, by refusing to pay, and by contesting the demand, says, that the proof of the injuries and accident are not satisfactory. There is no allegation in the declaration that proof of the injuries and accident has been *satisfactory to it.*

2. As it is a part of the case, that no witness was called to prove that the deceased fell down the stairs, it cannot be presumed that evidence was given to prove an accident. And supposing that the court shall go so far as to hold that the declarations of the deceased are admissible to establish the

fact that he did fall, still there is nothing in them to show that it was an *accidental* fall.

The declarations of the deceased made to his wife and son *four days* before he died, ought not to have been admitted to establish the fact that deceased did fall down the stairs in question, because they are clearly hearsay, and they come not within any of the exceptions to the general rule that derivative or secondhand statements are not receivable as evidence *in causa.**   The reasons against admitting them are that the party against whom the evidence is offered has had no opportunity to cross-examine the original source; and, that assuming the original statement to be correctly reported, it was not originally made under the sanction of an oath; and, though it were made under the sanction of an oath *in judicio,* it is not admissible unless the party against whom it is offered had the right and opportunity to cross-examine, but neglected it.

The fact which defendant in error seeks to establish by mere declarations, is not one of reputation, nor of pedigree, or boundary.   None of these established exceptions apply.

Nor as dying declarations were they admissible.   This is plain.

Nor are they *res gestæ.   Res gestæ* are the surrounding facts of a transaction, and may be submitted to a jury provided they can be established by competent means, sanctioned by the law, and afford any fair presumption or inference as to the question in dispute.   And again, declarations accompanying an act, explanatory of that act, are *res gestæ.* They are the surrounding facts, explanatory of an act, or showing a motive for acting.   But the principal fact must be first established, and until it is established, surrounding facts are not admissible—and, certainly, exhibiting surrounding facts is not establishing a principal fact.   For example: A merchant leaves his place of residence or denies himself to his creditors.   That he left his place of residence, or denied himself to his creditors, upon an issue of bankruptcy,

---

* Mima *v.* Hepburn, 7 Cranch, 290; King *v.* Inhabitants of Eriswell, 3 Term, 707; Ellicots *v.* Pearl, 10 Peters, 412.

are material facts; and one of these being proven, his decla rations made to others explaining why he left it, or denied himself, are admissible as *res gestæ;* but it would not be competent to show what he said, unless it were first made to appear that he has denied, or left his place of residence.

*Mr. Peck, contra,* relied on *Aveson* v. *Kinnaird\** as decisive of the case.

*Reply.*—The counsel for the widow cite *Aveson* v. *Kinnaird,†* and it is relied upon. But that case makes against the plain-tiff. The issue there was, whether the insured was in good health at the time the policy then in question was effected on her life by her husband. A few days after the physician examined her, and made inquiries of her about her health. She was seen in bed at 11 o'clock in the forenoon; and a witness was called to testify to the fact that she saw the deceased in bed at the time mentioned, and that the deceased then said she was not in good health, and that she was afraid she would die before the policy could be delivered. The fact that deceased was in bed was established by the witness. This was a material fact to be established upon the issue made in the case, viz., whether the deceased was in good health at the time; and doubtless the declarations of the deceased were admissible, explaining why she was in bed. Upon an issue as to whether the deceased was well or ill at the time in question, her declarations were admissible; for one's feelings while suffering from any malady are the true indicators of that malady, and how the deceased in the case cited felt could only be ascertained by what she said. The case was one of necessity as well as *res gestæ.* The very nature of that case made it necessary to show what the deceased said as to how she felt; and being found sick in bed, her declarations why she was there is a surrounding fact, explanatory of the material fact—being found in bed.

The declarations of the deceased, in the case at bar, as they show how he felt in the presence of the witnesses, are *res*

\* 6 East, 188.                          † Ib.

*gestæ* so far as they are explanatory of the other facts that were occurring then. But as evidence of his fall down the stairs, they are not competent.

The fact that deceased *declared* to his wife that he had fallen down the back stairs and hit his head, is not the point here in controversy. The point in controversy is, did the deceased fall down the stairs in question, and was the fall accidental? The *declaration* of the deceased, made to his wife, as she says, several days before he died, is all that we have upon the facts in question. If not competent to prove the fall, how is it enough to prove the accidental character of it?

Mr. Justice SWAYNE delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the Northern District of Illinois. The action was upon a policy of insurance. It insured Arthur H. Mosley against loss of life, or personal injury by any accident within the meaning of the instrument, and was issued to Mrs. Arthur H. Mosley, the wife of the assured, for her benefit. The declaration was in assumpsit. The defendant pleaded the general issue, and the cause was tried by a jury. The plaintiff recovered. During the trial, a bill of exceptions was taken by the plaintiff in error, by which it appears that the contest between the parties was upon the question of fact, whether Arthur H. Mosley, the assured, died from the effects of an accidental fall down stairs in the night, or from natural causes.

The defendant in error was called as a witness in her own behalf, and testified, "that the assured left his bed Wednesday night, the 18th of July, 1866, between 12 and 1 o'clock; that when he came back, he said he had fallen down the back stairs, and almost killed himself; that he had hit the back part of his head in falling down stairs; . . . she noticed that his voice trembled; he complained of his head, and appeared to be faint and in great pain."

To the admission of all that part of the testimony which relates to the declarations of the assured, about his falling down stairs, and the injuries he received by the fall, the

counsel of the defendants objected. The court overruled the objection, and the defendants excepted.

William H. Mosley, son of the assured, testified, in behalf of the plaintiff, "that he slept in the lower part of the building, occupied by his father; that about 12 o'clock of the night before-mentioned, he saw his father lying with his head on the counter, and asked him what was the matter; he replied, that he had fallen down the back stairs and hurt himself very badly." The defendants objected to both the question and answer. An exception to their admission followed.

The same witness testified further, "that on the day after the fall,.his father said he felt very badly, and that if he attempted to walk across the room, his head became dizzy; on the following day, he said he was a little worse, if anything." The admission of this testimony also was excepted to by the defendants.

This statement presents the questions which we are called upon to consider. They are, whether the court erred in admitting the declarations of the assured, as to his bodily injuries and pains, and whether it was error to admit such declarations, to prove that he had fallen down the stairs.

It is to be remarked, that the declarations of the former class all related to *present* existing facts at the time they were made.

Those of the latter class were made immediately, or very soon after the fall; the declarations to his son, before he returned to his bed-room; those to his wife, upon his reaching there.

Wherever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings are original and competent evidence. Those expressions are the natural reflexes of what it might be impossible to show by other testimony. If there be such other testimony, this may be necessary to set the facts thus developed in their true light, and to give them their proper effect. As independent explanatory or corroborative evidence, it is often

indispensable to the due administration of justice. Such declarations are regarded as *verbal acts*, and are as competent as any other testimony, when relevant to the issue. Their truth or falsity is an inquiry for the jury.

In actions for the breach of a promise to marry, such evidence is always received to show the affection of the plaintiff for the defendant while the engagement subsisted, and the state of her feelings after it was broken off; and in actions for criminal conversation, to show the terms upon which the plaintiff and his wife lived together before the cause of action arose. Upon the same ground, the declarations of the party himself are received to prove his condition, ills, pains, and symptoms, whether arising from sickness, or an injury by accident or violence. If made to a medical attendant, they are of more weight than if made to another person. But to whomsoever made, they are competent evidence. Upon these points, the leading writers upon the law of evidence, both in this country and in England, are in accord.*

There is a limitation of this doctrine that must be carefully observed in its application.

Such evidence must not be extended beyond the necessity upon which the rule is founded. It must relate to the present, and not to the past. Anything in the nature of narration must be excluded. It must be confined strictly to such complaints, expressions, and exclamations, as furnish evidence of " a *present* existing pain or malady."† Examined by the standard of these rules, the testimony to which this exception relates was properly admitted.

The other exception requires a fuller examination.

Was it competent to prove the fall by the declarations of the assured made under the circumstances disclosed in the bill of exceptions ?

In *Thompson and Wife* v. *Trevanion*,‡ the action was for the

---

* 1 Greenleaf on Evidence, § 102; 1 Phillips on Evidence (last ed.) p. 183; 1 Taylor on Evidence, 478, § 518.

† Bacon v. The Inhabitants, &c., 7 Cushing, 586.

‡ Skinner, 402.

battery and wounding of the wife. Lord Chief Justice Holt " allowed, what the wife said immediately upon the hurt received, and before that she had time to contrive or devise anything for her own advantage, to be given in evidence." The reporter adds: " *Quod nota.* This was at *nisi prius*, in Middlesex, for wounding the wife of the plaintiff." This case was referred to by Lord Ellenborough with approbation in the case before him of *Aveson* v. *Kinnaird.** In that case, Lawrence, Justice, in answer to the objection, that such evidence was hearsay, said: "It is in every day's experience in actions of assault, that what a man has said of himself, to his surgeon, is evidence to show what he has suffered by the assault."†

*The King* v. *Foster‡* was an indictment for manslaughter, for killing the deceased by driving a cab over him. A wagoner was called as a witness for the prosecution. He stated that he saw the cab drive by at a very rapid rate, but did not see the accident, and that immediately after, on hearing the deceased groan, he went to him and asked him what was the matter. The counsel for the prisoner objected, that what was said by the deceased, in the absence of the prisoner, could not be received in evidence.

Gurney, Baron, said, that what the deceased said at the instant, as to the cause of the accident, was clearly admissible.

Park, Justice, said, that it was the best possible testimony that, under the circumstances, could be adduced to show what knocked the deceased down. Mr. Justice Patterson concurred. The prisoner was convicted.

In the *Commonwealth* v. *Pike*,§ the indictment, as in the preceding case, was for manslaughter. The defendant was charged with killing his wife. It appeared that the deceased ran up stairs from her own room, in the night, crying murder, and bleeding. Another woman, into whose room she was admitted, went, at her request, for a physician. A third

---

* 6 East, 197.                    † Ib. 191.

‡ 6 Carrington & Payne, 325.     § 3 Cushing, 181.

person, who heard her cries, went for a watchman, and, on his return, proceeded to the room where she was. He found her on the floor, bleeding profusely. She said the defendant had stabbed her. The defendant's counsel objected to the admission of this declaration in evidence. The objection was overruled. The Supreme Court of Massachusetts held, that the evidence was properly admitted. It was said that the declaration was "of the nature of *res gestæ*," and that the time when it was made was so recent, after the injury was inflicted, as to justify receiving it upon that ground.

It is not easy to distinguish this case and that of *The King* v. *Foster*, in principle, from the case before us, as regards the point under consideration.

In *Aveson* v. *Kinnaird*, it was said by Lord Ellenborough, that the declarations were admitted in the case in Skinner, because they were a part of the *res gestæ*.

To bring such declarations within this principle, generally, they must be contemporaneous with the main fact to which they relate. But this rule is, by no means, of universal application. In *Rawson* v. *Haigh*,* a debtor had left England and gone to Paris, where he remained. The question was, whether his departure from England was an act of bankruptcy, and that depended upon the intent by which he was actuated. To show this intent, a letter written in France, a month after his departure, was received in evidence. Upon full argument, it was held that it was properly received. Baron Park said: "It is impossible to tie down to time the rule as to the declarations. We must judge from all the circumstances of the case. We need not go the length of saying, that a declaration, made a month after the fact, would, of itself, be admissible; but if, as in the present case, there are connecting circumstances, it may, even at that time, form a part of the *whole res gestæ*."

Where a peddler's wagon was struck and the peddler injured by a locomotive, the Supreme Court of Pennsylvania said: "We cannot say that the declaration of the engineer

---

* 2 Bingham, 99.

was no part of the *res gestæ*.   It was made at the time—in view of the goods strewn along the road by the breaking up of the boxes—and seems to have grown directly out of and *immediately after the happening of the fact.*"   The declaration was held to be "*a part of the transaction itself.*"*

In the complexity of human affairs, what is done and what is said are often so related that neither can be detached without leaving the residue fragmentary and distorted. There may be fraud and falsehood as to both; but there is no ground of objection to one that does not exist equally as to the other.   To reject the *verbal fact* would not unfrequently have the same effect as to strike out the controlling member from a sentence, or the controlling sentence from its context.   The doctrine of *res gestæ* was considered, by this court, in *Beaver* v. *Taylor*.†   What was said in that case need not be repeated.   Here the principal fact is the bodily injury.   The *res gestæ* are the statements of the cause made by the assured almost contemporaneously with its occurrence, and those relating to the consequences made while the latter subsisted and were in progress.   Where sickness or affection is the subject of inquiry, the sickness or affection is the principal fact.   The *res gestæ* are the declarations tending to show the reality of its existence, and its extent and character. The tendency of recent adjudications is to extend rather than to narrow, the scope of the doctrine.   Rightly guarded in its practical application, there is no principle in the law of evidence more safe in its results.   There is none which rests on a more solid basis of reason and authority.   We think it was properly applied in the court below.

In the ordinary concerns of life, no one would doubt the truth of these declarations, or hesitate to regard them, uncontradicted, as conclusive.   Their probative force would not be questioned.   Unlike much other evidence, equally cogent for all the purposes of moral conviction, they have the sanction of·law as well as of reason.   The want of this

---

* Hanover Railroad Co. *v.* Coyle, 55 Pennsylvania State, 402.

† 1 Wallace, 637.

concurrence in the law is often deeply to be regretted.* The weight of this reflection, in reference to the case under consideration, is increased by the fact, that what was said could not be received as " dying declarations," although the person who made them was dead, and hence, could not be called as a witness.

JUDGMENT AFFIRMED.

Mr. Justice CLIFFORD, dissenting.

Questions as to the rules of evidence " are of vast importance to all orders and conditions of men " interested therein, as parties in common law suits, as life, liberty, and property depend very largely upon their strict observance, that proper testimony, pertinent to the issue, may not be excluded, and that incompetent and improper testimony may not be received.†

" One of these rules," says Chief Justice Marshall, " is that hearsay evidence is, in its own nature, inadmissible. Not only because it supposes that better testimony might be adduced to prove the alleged fact, but on account of its intrinsic weakness, its incompetency to satisfy the mind of the existence of the fact, and the frauds which might be practised under its color." Experience shows that wrong verdicts are the usual result of wrong rulings in admitting improper testimony, or in rejecting that which was competent and material. Appellate courts, viewing the matter in that light, are therefore prompt to correct such errors and to reverse judgments founded on verdicts produced or influenced by such erroneous rulings.

All courts agree, that the introduction of evidence to the jury is governed by certain fixed principles of law, and text writers usually treat the subject under four general heads : 1. That the evidence must correspond with the allegations and be confined to the issue. 2. That the substance of the declaration must be proved to warrant a verdict in

---

* Appleton on Evidence, ch. 11, 12.

† Child v. Hepburn, 7 Cranch, 295; Rex v. Eriswell, 3 Term, 721.

favor of the plaintiff.    3. That the burden of proving a proposition or issue lies on the party holding the affirmative. 4. That the best evidence, of which the case in its nature is susceptible, must always be produced.*

Founded, as the action is, upon a policy of insurance, it becomes necessary, in order to understand the precise bear_ing of the rulings embraced in the exceptions, to examine the terms of the contract, and to refer to the exact issue tendered in the declaration.    By the terms of the policy, insurance, for the period of one year, in the sum of five thousand dollars, was granted by the defendants to the late husband of the plaintiff, against " personal injury caused by any accidents within the meaning of this policy," . . . and such injuries as shall occasion death within three months from the happening thereof, and also against any such personal injury, though not fatal, if the assured was thereby absolutely and totally disabled from the prosecution of his usual employment.    After setting out the policy in full, the declaration alleges that the assured, on the 1st of July in the same year, "accidentally fell down a pair of stairs in the city of Chicago, in said county, and was severely injured thereby," and that the assured, within three months after the happening of the said accident, died, and that the death of the assured " was occasioned by said injury and accident."

Defendants appeared and pleaded that they never promised in manner and form, as alleged in the declaration, which pre-sented the direct issue, whether the assured met with the accident and injury described in the declaration, and whether his death was occasioned by " the personal injuries caused" by that accident, as therein alleged.    Payment of the sum insured, in case of such personal injury or death occasioned by any accident within the terms of the policy, was to be made to the plaintiff, and she was examined as a witness to support her claim against the defendant corporation.

Several witnesses " testified as to back stairs being there, leading to the back yard," but " no witness testified that he

---

* 1 Greenleaf on Evidence, § 50.

saw the deceased fall down the steps," and there was no testimony upon the subject, except that given by the plaintiff and the son of the deceased, as recited in the bill of exceptions. She testified, that between twelve and one o'clock, (July 18, 1866), he (her husband) got up and went down stairs for the purpose described; that she did not know how long he was gone, but "when he came back, he said he had fallen down the stairs and almost killed himself; that he had hit and hurt the back part of his head in falling down the stairs which led out back."

Objection was duly taken to the testimony of the witness as to the declarations of the husband, but the court overruled the objection, and the defendants then and there excepted.

His son was also examined and testified, that he saw his father, about twelve o'clock that night, lying with his head on the counter, and that " he asked him what was the matter, and he answered, that he had fallen down the back stairs and hurt himself very bad." Seasonable objection was also made to the introduction of this testimony, but the court admitted it, and the defendant excepted, as appears by the transcript.

Viewed in the light of the facts, as here stated, which are carefully and accurately drawn from the record, I am clearly of the opinion, that the declarations of the deceased, as given in the testimony of those witnesses, were inadmissible, and that the judgment of the Circuit Court should be reversed.

Mere declarations, made by a third person, not under oath, it is conceded are hearsay, but the argument is, that the declaration given in evidence in this case may be regarded as part of the *res gestæ*, and therefore, that the testimony of both witnesses was properly admitted as original evidence. Declarations of a party to a transaction, though he was not under oath, if they were made at the time any act was done which is material as evidence in the issue before the court, and if they were made to explain the act, or to unfold its nature and quality, and were of a character to have that

effect, are treated, in the law of evidence, as verbal acts, and as such, are not hearsay, but may be introduced with the principal act which they accompany, and to which they relate, as original evidence, because they are regarded as a part of the principal act, and their introduction in evidence is deemed necessary to define that act and unfold its true nature and quality.*

But such declarations cannot properly be received as evidence, unless the principal act which they accompany and to which they relate, is, itself, material to the issue to be submitted to the jury, nor unless the declarations were made at the time the principal act was done, nor unless they were of a character to explain that act, or to unfold its true nature and quality, as they are only admissible as incident to the principal act, and because they are a part of it, and are necessary to explain and define its true character.†

. When the inquiry is into the nature and character of a certain transaction, not only what was done, says Mr. Roscoe, but also what was said by those present, during *the continuance of the transaction*, is admissible for the purpose of illustrating its peculiar character and circumstances.‡

Undoubtedly, whenever evidence of an act done by a party is admissible, the declarations he made, at the time the act was done, are also admissible, if they were of a character to elucidate and unfold the act, because they derive a degree of credit from the act itself, and do not rest entirely upon a statement not made under oath.§

Unless, however, they were made at the time the act was done, or during the continuance of the transaction constituting the principal fact, they are not admissible, as in that state of the case, they cannot derive any credit from the principal fact, which alone renders them admissible in evidence.

Verbal and written declarations are admissible, says Mr.

---

* Enos *v.* Tuttle, 3 Connecticut, 250.

† Corinth *v.* Lincoln, 34 Maine, 312; Noyes *v.* Ward, 19 Connecticut, 269; Moore *v.* Meacham, 10 New York, 210; Osborn v. Robbins, 37 Barbour, 482.

‡ Roscoe on Evidence, 23.

§ Sessions *v.* Little, 9 New Hampshire, 271.

Phillips, "when they accompany some act, the nature, object, or motives of which, are the subject of inquiry." In such cases, he says, words are receivable as original evidence, on the ground, that what is said, at the time, affords legitimate, if not the best, means of ascertaining the character of such equivocal acts as admit of explanation from those indications of the mind which language affords.*

Evidently, the rule as understood by the author of that work, would not admit the declarations, unless they were made at the time the act was done, or during the continuance of the transaction; but the annotator is even more explicit, as he expressly adopts the rule laid down in the leading case, that to be a part of the *res gestæ*, the declarations must have been made at the time of the act done, which they are supposed to characterize, and have been well calculated to unfold the nature and character of the facts which they are intended to explain, and so to harmonize with them as obviously to constitute one transaction.†

Much of the difficulty in the application of the rule, arises from the nature of the principal act, especially, in cases where it is continuous, or extends for a considerable time, as in questions of domicile, or of bankruptcy; but there is no difficulty in applying the rule in cases where the principal act is single and well defined as to time, nor is there any well-considered case, which gives any countenance to the admission of such declarations, unless they were made at the time the principal act was done, or, as in the case of a riot, during the continuance of the transactions.‡

Equity rules are the same as the rules at common law, as appears by the decision of Chancellor Walworth, *In the matter of Taylor,*§ in which he held, that the declarations of parties, and other attending circumstances, in order to render them

---

* Phillips on Evidence, ed. 1868, 185.

† Enos *v.* Tuttle, 3 Connecticut, 250.

‡ Russell *v.* Frisbie, 19 Connecticut, 209; Carter *v.* Beals, 44 New Hampshire, 412; Price *v.* Powell, 3 Comstock, 322; Ridley *v.* Gyde, 9 Bingham, 351.

§ 9 Paige, 617.

admissible as a part of the *res gestæ*, must be contemporaneous with the main fact under consideration, and to which they were intended to give character.*

Suppose the rule to be that such declarations are inadmissible, unless made at the time the principal act was done, still it is contended that the rulings of the court, in admitting the declarations in this case, may be sustained as falling within the rule laid down in the case of *Commonwealth* v. *Mc-Pike*,† and the opinion of the majority of the court, as just read, rests chiefly upon that ground. The indictment, in that case, was for manslaughter, and the evidence introduced showed that the deceased, on the morning she received the mortal blow, ran from her room, where her husband, the defendant, was, to a room occupied by the witness, in the same house, crying murder; and when admitted to the room, she said she was killed. Another witness heard the cry of murder, and went for a watchman, and when he returned, he went to the room where the wounded woman was, and, among other things, she said to him that her husband had stabbed her, and told the witness what she wanted done, if she died.

Objection was taken to the statement, as to the declaration of the wife, that the defendant had stabbed her, but the court admitted the testimony, and the case was removed to the Supreme Court for revision. Other exceptions were taken to the rulings of the court, but they were all overruled, the court holding that the statement of the wife, as to the cause and manner of the injury, might be "sustained, upon the ground that the testimony was of the nature of the *res gestæ*." No authorities are cited in support of the proposition, and the opinion, upon that point, is very brief, and seems to rest mainly upon the closing sentence upon that subject, which is as follows: "In the admission of testimony of this character, much must be left to the exercise of the sound discretion of the presiding judge."

Prior to that date, all the decisions of that court had been

---

* Frink *v.* Coe, 4 Greene, 556.     † 3 Cushing, 184.

in strict conformity to the rule, that declarations not under oath, in order to be admissible as original evidence, must have been made at the time the principal act was done or committed, as before explained, unless they were admitted as declarations in *articulo mortis;* and every decision made by that court, upon that subject, since that case was determined, is equally explicit in prescribing the same rule. Reference will be made to a few of the subsequent cases to establish that proposition.

Where the bodily or mental feelings of a party are to be proved, the usual and natural expressions of such feelings are considered competent and original evidence in his favor.[*] Such evidence, however, say the court, is not to be extended beyond the necessity on which the rule is founded; and they add, that anything in the nature of narration or statement is to be carefully excluded, and the testimony (unless the statement was made by a patient to a medical man) is to be confined strictly to such complaints and expressions as usually and naturally accompany, and furnish evidence of, a *present* existing pain or malady. Before the year expired, the same question, under a different state of facts, was again presented to that court, and in view of the importance of the questions, and of their frequent occurrence, the court came to the conclusion to consider the subject somewhat more at large than they had theretofore done, and to set forth and illustrate "the principles and tests by which this class of questions must be determined."[†] They accordingly decided:

1. That the admission of such evidence is not left to the discretion of the presiding judge, as had sometimes been supposed; that its admission is governed by principles of law, which must be applied to particular cases as other principles are applied, in the exercise of a judicial judgment, and that errors of judgment in the case, as in other cases, may be examined and corrected.[‡]

2. That a declaration, if it has its force by itself, as an ab-

---

[*] Bacon v. Charlton, 7 Cushing, 586.

[†] Lund v. Tyngsborough, 9 Cushing, 41.

[‡] Tatham v. Wright, 6 Neville & Manning, 151.

stract statement, detached from any particular fact in question, is not admissible in evidence, because it depends for its effect on the credit of the person making it, and therefore is hearsay.

3. That mere narrative is never admissible, because such statements are detached from any material act which is pertinent to the issue.

4. That whenever the act of the party may be given in evidence, his declarations, made at the time, are also admissible, if they were calculated to elucidate and explain the character and quality of the act, and were so connected with it as to derive credit from the act itself, and to constitute one transaction.

5. That there must be a main or principal fact or transaction, and that such declarations *only* are admissible as grow out of the principal transaction, serve to illustrate its character, are contemporary with it, and derive some degree of credit from it.

6. That the main act or transaction is not, in every case, necessarily confined to a particular point of time, but whether it is so or not depends solely upon the nature and character of the act or transaction.

Search is made in vain for any decided case, where the principles and tests which regulate and control the admission of such evidence is so satisfactorily stated, and with so much fulness and clearness as in that case.*

Narration of the cause and manner of the injury has been carefully excluded since that decision in the courts of that State, even where the statements were made by a patient to his physician, as will be seen by the case of *Chapin* v. *Marlborough*,† which was decided six years later.

By the statement of the case, it appears that the plaintiff called a physician, and wished him to examine his leg, saying that it gave him great pain, and the physician testified, that he said that he had been struck by a horse, on that leg, four or five months before.

---

\* Meck *v.* Perry, 36 Mississippi, 261.          † 9 Gray, 245.

Seasonable objection was made to the evidence, but the judge, at the trial, admitted it, and the case was transferred to the Supreme Court, where a new trial was granted. In disposing of the case, the court say, the exception must be sustained, which was to the admission of the plaintiff's statement to his physician, that his leg had been struck by a horse; and the court add, that it was a statement of a fact, "*and was used as evidence of that fact.*" It was, therefore, wrongly admitted, which shows to a demonstration, that the evidence in this case was also wrongly admitted, because it was admitted and used as evidence to prove that the injury and death of the assured were occasioned by the alleged accident.

Death was occasioned by a stab, in the case of *Commonwealth* v. *Hackett*,[*] and it is suggested, that the ruling in that case qualifies the doctrine, as laid down in the preceding case, but there is no foundation for the suggestion, as the court say, that the declaration given in evidence was uttered immediately after the homicidal act, in the hearing of a person who was present when the mortal stroke was given, who heard the first words uttered by the deceased, and who went to him, after so brief an interval of time, that the declaration or exclamation of the deceased (I am stabbed) may fairly be deemed a part of the same sentence as that which followed instantly after the stab with the knife was inflicted.

Many bodily sensations and ailments are of such a character that they can only be known to the person who experiences them, and, in view of that fact, the Supreme Court of that State decided, in the case of *Barber* v. *Merriam*,[†] that the statements of a patient to his physician, as to the character and seat of his ailments, when made for the purpose of receiving medical advice, were admissible in an action for a personal injury, but they expressly affirmed the doctrine of the previous decisions, to which reference has been made.

---

[*] 2 Allen, 139.                    [†] 11 Allen, 322.

Declarations of a narrative character were again offered iu the subsequent case of *Commonwealth* v. *Densmore et al.,*\* and they were again rejected as hearsay evidence; and the leading case of *Lund* v. *Tyngsborough* was again approved and re-affirmed.

Examined in the light of the decisions made by the Supreme Court of Massachusetts, since the case of *Commonwealth* v. *McPike*, I am of the opinion, that the rulings of the Circuit Court, in this case, find no support from any reported case in the volumes of the Massachusetts Reports.

Next suggestion is, that those rulings may be sustained upon the authority of the case of *Rex* v. *Foster*,† and of the case of *Thompson* v. *Trevanion*,‡ but those cases are so imperfectly reported that they can hardly be said to be reliable. Grant, however, that the reports of the cases, though meagre, are reliable, still, I am of the opinion that the rules of evidence there adopted, are contrary to the modern decisions in both countries. They are both specially noticed by Mr. Roscoe, in his valuable Treatise on the Law of Evidence, and he says, they "are difficult to reconcile with established principles." Both admit the declarations to extend to the particulars of what was said, and though they (the declarations) were both made in close proximity to the event to which they relate, it is very questionable indeed, says the same writer, whether that ground alone is sufficient to render them admissible.§

Both of these cases are also cited by Taylor, in his more recent work upon the Law of Evidence, and yet, the rules which he promulgates, as tests to regulate the admission of such evidence, show that the rule adopted in those cases is not good law. His leading tests are as follows:

1. That declarations; though admissible as evidence of the declarant's knowledge or belief of the facts to which they relate, and of his intentions respecting them, are *no proof* of the *facts* themselves, and, therefore, if it be necessary to show

---

\* 12 Allen, 537.                    † 6 Carrington & Payne, 325.

‡ Skinner, 402.                      § Roscoe's Criminal Evidence, 26.

the existence of such facts, proof *aliunde* must be laid before the jury.*

2. That, although acts, by whomsoever done, are *res gestæ*, if relevant to the matter in issue, yet, if they be irrelevant, declarations, qualifying or explaining them, will, together with the acts themselves, be rejected.†

3. That where an act done is evidence *per se*, a declaration accompanying that act may well be evidence, if it reflects light upon or qualifies the act, but where the act is, in its own nature, irrelevant to the issue, and where the declaration *per se* cannot be received, no case has yet established the rule, that the union of the two will render them admissible.‡

4. That an act cannot be varied, qualified, or explained by a declaration which amounts to no more *than a mere narrative* of a past transaction, nor by an isolated conversation, nor by an isolated act done, at a later period.§

Condemned by all these tests, it is impossible to admit, that the two cases relied on, as supporting the rulings of the Circuit Court, can be good law, and if not, then those rulings stand unsupported in principle, or by any well-considered English or American decision.‖

Obviously, the main fact in the case before the court was the alleged accident, and the bill of exceptions finds that there was no other evidence to prove that material allegation than the testimony of the plaintiff, and the son of the deceased, who knew nothing of what had occurred, except what they were told by the injured party.¶

Whenever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings, made at the time in question, are admissible for that purpose, but they are not admissible to prove *a past occurrence*, nor to prove that they were occasioned by such an accident

---

* 1 Taylor on Evidence, § 523. † Ib. § 524.

‡ Ib. § 524; Redfield on Carriers and Bailments, § 454.

§ Taylor on Evidence, § 526, Nutting v. Page, 4 Gray, 584.

‖ Wright v. Tatham, 5 Clark & Finnelly, 770; S. C. 7 Adolphus & Ellis, 389.

¶ Baker v. Griffin, 10 Bosworth, 142.

as that alleged in the declaration as the foundation of the plaintiff's claim.

Mr. Justice NELSON also dissents from the opinion and judgment of the court, in this case, and concurs in this opinion.