**UNITED STATES of America,**

v.

**Angel Manuel ALFONSO,
et al, Defendants.**

**No. Crim. 97–257(HL).**

United States District Court,
D. Puerto Rico.

July 27, 1999.

---

Ricardo R. Pesquera–Annexy, Orlando, FL, for Angel Manuel Alfonso.

Francisco Acevedo–Padilla, Vega & Acevedo, Edif, Asociacion de Maestros, Hato Rey, PR, for Angel Hernandez–Rojo.

Juan M. Masini–Soler, San Juan, PR, for Juan Bautista–Marquez.

Luis A. Delgado–Rodriguez, Edif IBM, Hato Rey, PR, Manuel Vasquez, Coral Gables, FL, for Francisco Secundino Cordova.

Howard M. Srebnick, Black, Srebnick & Kornapan, P.A., Miami, Fl, for Jose Antonio Llamas.

Ricardo L. Rodriguez–Padilla, Hato Rey, PR, Howard M. Srebnick, Black, Srebnick & Kornapan, Miami, Fl, for Jose Rodriguez.

Jose M. Quinon, Quinon and Strafer, Miami, Fl, Ricardo L. Rodriguez–Padilla, Hato Rey, PR, for Alfredo Domingo–Otero.

Guy Luis Dominguez, Miami, FL, for Nautical Sports Inc.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is a plethora of motions by both the Government and the defendants regarding the admissibility of certain statements made by defendant Angel Manuel Alfonso ("Alfonso") at the time of his arrest. At approximately 3:00 in the afternoon of October 27, 1997, Alfonso and co-defendants Angel Hernández Rojo, Juan Bautista Marquez, and Francisco Secundino Cordova were traveling aboard the *M/V Esperanza* approximately 11 miles off the coast of Boquerón, Puerto Rico and within the territorial waters of the United States.[1] The United States Coast Guard vessel *Baranof* intercepted the *Esperanza* and after communicating with it by radio, sent four Coast Guard officers to board the *Esperanza* and check its documentation. Because the *Esperanza* was taking on water, the Coast Guard commanding officer and the master of the *Esperanza* agreed that they would proceed to Aguadilla, Puerto Rico for repairs. The trip took three to four hours.[2] Once ashore and while the four defendants were still on board, the vessel was searched by federal law enforcement personnel. At some time during the search Alfonso signed a written document stating that there were no weapons on board the vessel.[3] Approximately an hour into the search, the law enforcement personnel found rifles in a hidden compartment. Special Agent Rocco of the United States Customs Service informed Alfonso that they had found weapons on the vessel and that he was under arrest. Rocco began to read Alfonso his Miranda rights. Both during and after the reading of his rights, Alfonso made the following statements whose admissibility are at issue here:

1 The rifles were his.

2 He placed the rifles on board.

3 The reason for the rifles was to assassinate Fidel Castro when he visited Margarita Island in the near future.

4 He was an ex-political prisoner who had been imprisoned by Castro.

5 He had connections in Venezuela.

6 The arresting officer should check Alfonso's passport because all his trips to Venezuela had not been for vacation, and it did not take much to figure out that he traveled to Venezuela strictly for business.

7 Even though he will go to jail, once he gets out he will attempt a second mission to assassinate Castro because his sole mission in life is to kill Castro.

8 He was a leader fighting for Cuban freedom, much like Martin Luther King.

The Government argues that these statements are admissible as statements against interest or excited utterances.[4] Additionally, the Government claims that statement number 7 is admissible pursuant to the state of mind exception to the hearsay rule. Defendants claim that the statements are inadmissible and that allowing them in would violate the rights of the defendants-except Alfonso-under the Confrontation Clause.

---

1. For the factual scenario which gives context to the statements at issue, the Court relies on the Report and Recommendation of Magistrate Judge Justo Arenas and the transcript of the hearing which Judge Arenas held in order to make his recommendation. *See* docket nos. 100, 107, & 172.

2. Docket no. 107, at 39–40.

3. Docket no. 172, at 95, 104–05.

4. The Government had originally argued that four additional statements made by Alfonso to Special Agent Huite were also admissible. It subsequently withdrew its motion to admit these statements.

## DISCUSSION

1. *Admissibility of the statements against all defendants, except Alfonso*

 a. *The statements against interest exception*

The resolution of this issue requires the Court to delve into that complex area of the law where the concepts of hearsay and the Confrontation Clause intersect. The Government argues that Alfonso's statements are admissible against all the defendants because they are counter to his penal interest. *See* Fed.R.Evid. 804(b)(3). The Confrontation Clause provides that in all criminal prosecutions, the accused shall have the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. When the Government seeks to present out of court statements, the Confrontation Clause restricts the scope of admissible hearsay in two ways. First, it requires the prosecution to demonstrate that the declarant is unavailable. *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980). A witness is unavailable if his attendance cannot be procured "by process or other reasonable means." Fed.R.Evid. 804(a)(5); *United States v. McKeeve,* 131 F.3d 1, 9 (1st Cir.1997). In the present case, all parties assume that Alfonso will avail himself of his Fifth Amendment right not to testify. Therefore, he is unavailable for purposes of Federal Rule of Evidence 804. *See United States v. Zurosky,* 614 F.2d 779, 792 (1st Cir.1979).

The second aspect by which the Confrontation Clause affects the admissibility of hearsay comes into play once the declarant is shown to be unavailable. The Clause will permit "only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.'" *Roberts,* 448 U.S. at 65, 100 S.Ct. at 2539 (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 107, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934). The statement of an unavailable witness will be admissible only if it has "adequate 'indicia of reliability.'" *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. A statement meets this criterion of reliability if (1) it "falls within a firmly rooted hearsay exception or (2) it contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything" to the statement's reliability. *Lilly v. Virginia,* 527 U.S. 116, 119 S.Ct. 1887, 1894, 144 L.Ed.2d 117 (1999) (plurality) (quoting *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539) (internal quotations omitted)). A hearsay exception is firmly rooted "if, in light of longstanding judicial and legislative experience, it rests on such a solid foundation that admission of virtually any evidence within it comports with the substance of the constitutional protection." *Lilly,* 527 U.S. at ——, 119 S.Ct. at 1895 (citations and internal quotations omitted).

The plurality in the Supreme Court's recent *Lilly* opinion held that a confession by an accomplice which inculpates a criminal defendant does not fall within a firmly rooted exception to the hearsay rule. *Id.* at ——, 119 S.Ct. at 1899. Thus, Alfonso's statements may be admissible against his co-defendants only if it has a particularized guarantee of trustworthiness. The plurality in *Lilly,* however, stated that an accomplice's confession that incriminates co-defendants is "presumptively unreliable." *Id.* at ——, 119 S.Ct. at 1897. The Government argues that these statements are trustworthy because they were spontaneous and excited in nature; they were exclusively self-inculpatory and do not refer to other defendants; and they were extraordinarily incriminating. For the reasons discussed below in the section on whether these are excited utterances, the spontaneity of these statements is not clear-cut. And they are not exclusively self-inculpatory. Although they do not directly mention Alfonso's co-defendants, they could create a reasonable inference in conjunction with other evidence which inculpates them. Therefore, the Court finds that—

as statements against interest—they do not contain particularized guarantees of trustworthiness sufficient to overcome the presumption as described in *Lilly* that they are unreliable.

### b. The excited utterances exception

 The Government argues in the alternative that these statements may also be admitted as excited utterances. *See* Fed.R.Evid. 803(2). A statement constitutes an excited utterance when three elements are present: (1) the declarant experiences a startling event or condition, (2) he makes a statement while still subject to the influence of the event, and (3) the statement is related to the event. *United States v. Collins*, 60 F.3d 4, 8 (1st Cir. 1995); *United States v. Bailey*, 834 F.2d 218, 227–28 (1st Cir.1987). There is not a set rule as to how much time may elapse between the event and the statement. 3 Saltzburg, Martin & Capra, *Federal Rules of Evidence Manual*, at 1653 (7th ed.1998). If the time interval between the event and the statement is long enough to allow the declarant reflective thought, the statement should be excluded, absent proof that the declarant had in fact engaged in a reflective thought process. 2 *McCormick on Evidence* § 272, at 218–19 (J.Strong 4th ed.).

 In the present case, there are two potential occurrences that could qualify as a startling event. One is the *Esperanza*'s initial encounter with the Coast Guard. There was, however, a sizeable lapse of time between this encounter and Alfonso's statements: the Coast Guard stopped the *Esperanza* around three in the afternoon and Alfonso did not make his statements until some time around nine o'clock that evening. Additionally, it is not clear how Alfonso's statements were made while he was still subject to the influence of this event. Thus, the Coast Guard's stopping of the *Esperanza* could not have been the startling event for the statements which the Government now seeks to admit.

 The other possible startling event was the discovery of the weapons and the crew members' being placed under arrest. It was while Alfonso was being read his Miranda rights that he made the first of the statements at issue. There was thus a close temporal proximity between event and statement. The circumstances as a whole, however, indicate that Alfonso did have the opportunity to engage in reflective thought and that his arrest alone did not induce him to make the statements. The search of the vessel had been going on for approximately an hour, and Alfonso was present at the search.[5] If, as the Government claims, Alfonso knew that the weapons were on board, then their eventual discovery by the law enforcement personnel searching the vessel in his presence should not have been a surprise. Moreover, Alfonso had originally informed these law enforcement agents that there were no weapons on board.[6] The fact that he did so indicates that he had given thought to the situation and had decided to handle it by misinforming the agents. Excited utterances are considered reliable because the declarant has not had the opportunity to reflect on the consequence of his exclamation. *White v. Illinois*, 502 U.S. 346, 355–56, 112 S.Ct. 736, 742, 116 L.Ed.2d 848 (1992). It appears that here, however, Alfonso did have the opportunity to reflect on the situation. There was an hour-long search on the *Esperanza*, Alfonso witnessed the search, and he originally told the searchers that there were no weapons on board. These circumstances lead the Court to conclude that the discovery of the weapons and the subsequent arrests did not constitute a startling event. The Court also concludes that because it appears that Alfonso had reflected on the situation, his statements were not made while he was wholly subject to the influence of the event. Therefore, the Court

---

**5.** Docket no. 107, at 109–10; docket no. 172, at 62–64, 89.

**6.** Docket no. 172, at 95, 104–05.

concludes that his statements were not excited utterances.[7]

### c. The state of mind exception

■■■■ The Government argues that statement number 7–that even though he will go to jail, once he gets out he will attempt a second mission to assassinate Castro because his sole mission in life is to kill Castro-is admissible under the state of mind exception. *See* Fed.R.Evid. 803(3). Alfonso's declaration of his intent to kill Castro is a statement of his "existing state of mind," including an intent, plan, or motive. *See id.* This hearsay exception is a firmly rooted one. *See Mutual Life Ins. Co. of New York v. Hillmon,* 145 U.S. 285, 293–300, 12 S.Ct. 909, 912–14, 36 L.Ed. 706 (1892); *see also Travellers' Ins. Co. of Chicago v. Mosley,* 75 U.S. 397, 405–09, 19 L.Ed. 437, 8 Wall. 397 (1869); *Barber v. Scully,* 731 F.2d 1073, 1075 (2nd Cir.1984); *Lenza v. Wyrick,* 665 F.2d 804, 811 (8th Cir.1981). Therefore, this comment is admissible against all the defendants under the state of mind exception of Rule 803(3).

### 2. Admissibility of the statements as against Alfonso

These statements are not admissible against Alfonso's co-defendants as statements against interest because of Confrontation Clause concerns. These concerns are not present, however, in Alfonso's case since he himself made the statements. These statements are admissible against him as either statements against interest or as party admissions. *See* Fed.R.Evid. 801(d)(2) & 804(b)(3).

■■■■ The admissibility of these statements as against Alfonso, but not as against the other defendants, requires the Court to consider the risk that one non-testifying co-defendant's confession will unfairly prejudice a defendant in a joint trial, as defined by *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and its progeny. In a joint trial, a defendant will be denied his Sixth Amendment right to confrontation if a facially incriminating confession of a non-testifying co-defendant is admitted, even though the court instructs the jury to consider the confession only against the co-defendant who made the statement. *Richardson v. Marsh,* 481 U.S. 200, 207, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987); *Bruton,* 391 U.S. at 135–36, 88 S.Ct. at 1627–28. Because of the risk that a jury will ignore instructions to the contrary and will consider a nontestifying codefendant's incriminating out-of-court confession against a defendant, the admission of the confession in a joint trial will violate the defendant's right of cross-examination. *United States v. Mangone,* 105 F.3d 29, 32 (1st Cir.1997). A *Bruton* error occurs when the codefendant's confession *expressly* implicates the defendant as an accomplice, leaving no doubt that the confession would be powerfully incriminating. *Richardson,* 481 U.S. at 208, 107 S.Ct. at 1707. There is no error, however, when the confession does not facially incriminate the defendant and incriminates only when linked with other evidence introduced later at trial. *Id.; United States v. Smith,* 46 F.3d 1223, 1228 (1st Cir.1995); *United States v. Limberopoulos,* 26 F.3d 245, 253 (1st Cir.1994). Such inferential incrimination may be cured by a court's limiting instructions to the jury. *Richardson,* 481 U.S. at 208–11, 107 S.Ct. at 1708–09; *Limberopoulos,* 26 F.3d at 253. An out-of-court statement which does not directly name or impugn a defendant will generally not be so powerfully incriminating as to raise *Bruton* concerns. *Limberopoulos,* 26 F.3d at 253; *United States v. Porter,* 764 F.2d 1, 16 (1st Cir.1985).

In the present case, none of the statements by Alfonso directly name any of his codefendants. Read by themselves, the statements do not incriminate any of the

---

7. These statements are not admissible as co-conspirator statements because they were not made "during the course and in furtherance of the conspiracy." *See* Fed.R.Evid. 801(d)(2)(E).

other defendants. They could be incriminating against the other defendants only if considered in conjunction with other evidence. The statements incriminate by inference only, and any such inference can be cured by a limiting instruction to the jury. *See Richardson,* 481 U.S. at 208–11, 107 S.Ct. at 1708–09; *Limberopoulos,* 26 F.3d at 253. Thus, the statements are, quite simply, not powerfully incriminating as to the other defendants. Therefore, there is not a *Bruton* problem as to their admissibility. The statements are admissible against Alfonso, and the Court will provide limiting instructions to the jury to protect the other defendants.

*3. Severance*

 Alfonso's co-defendants move to sever the case against him from their case. They argue that if his statements are admitted, severance will be necessary. If it appears that a defendant will be prejudiced by his being tried with his co-defendants, the trial court may sever his case. Fed.R.Crim.P. 14. A district court should take this step only if there is a serious risk that a defendant's specific trial rights will be compromised by a joint trial or if a joint trial will prevent the jury from reaching a reliable decision regarding guilt or innocence. *Zafiro v. United States,* 506 U.S. 534, 539, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993); *United States v. LiCausi,* 167 F.3d 36, 49 (1st Cir.1999). There is a strong presumption that all the defendants named in an indictment be tried together. *United States v. Houlihan,* 92 F.3d 1271, 1295 (1st Cir.1996); *see also Richardson,* 481 U.S. at 210, 107 S.Ct. at 1709 ("joint trials generally serve the interests of justice by avoiding the scandals and inequity of inconsistent verdicts."). A district court may, rather than sever a case, take less drastic measures such as limiting instructions to the jury to minimize a risk of prejudice. *Zafiro,* 506 U.S. at 539, 113 S.Ct. at 938.

 In the present case, all the statements will be admissible against Alfonso. Only one will be admissible against the other defendants. As discussed above, the Court will provide limiting instructions to the jury regarding the rest of Alfonso's statements. This will protect the other defendants from any prejudice. Therefore the request to sever the case against Alfonso is denied.

WHEREFORE, the Court holds that the following statements are admissible against Alfonso:

1 The rifles were his.

2 He placed the rifles on board.

3 The reason for the rifles was to assassinate Fidel Castro when he visited Margarita Island in the near future.

4 He was an ex-political prisoner who had been imprisoned by Castro.

5 He had connections in Venezuela.

6 The arresting officer should check Alfonso's passport because all his trips to Venezuela had not been for vacation, and it did not take much to figure out that he traveled to Venezuela strictly for business.

7 Even though he will go to jail, once he gets out he will attempt a second mission to assassinate Castro because his sole mission in life is to kill Castro.

8 He was a leader fighting for Cuban freedom, much like Martin Luther King.

As to the other defendants, only statement number 7 will be admissible. The request to sever the trial is hereby denied.[8]

**IT IS SO ORDERED.**

8. This opinion and order resolves the following motions filed on the issues discussed here-

in: docket numbers 199, 200, 202, 205, 206, 212, 236, and 237.