JARED D. MATTESON, Respondent, v. THE NEW YORK CEN-
TRAL RAILROAD COMPANY, Appellants.

In an action by the husband against a railroad company for damages sustained
from injuries inflicted upon the wife of the plaintiff, &c., expressions of pain
and suffering, made by the wife to the physicians, when they were examining
her for the purpose of learning her physical condition, are admissible as
evidence.

So, likewise, declarations as to her health, made by the wife to a neighbor,
shortly after the injury, are admissible, especially when called out by the
defendant on cross-examination.

The opinions of physicians as to the nature of the affliction complained of, its
cause, and the probability of its curability, are admissible upon the facts of
the case, as proved by other witnesses on the trial.

APPEAL from a judgment of the Supreme Court in the fifth
district, affirming a judgment upon a verdict in favor of the
plaintiff.

The action was brought to recover damages alleged to have
resulted from injuries to the plaintiff's wife, occasioned by
the negligence of the defendants' servants, while she was
riding in their cars. The cause was tried at the Oneida Cir-
cuit, in October, 1860, before Justice MORGAN and a jury.
It appeared, by the evidence, that, on the 7th of July, 1859,
the wife of the plaintiff, with her daughter, about seven years
old, took passage over the defendants' road, from Syracuse
to Utica, in an express train, which was due at the latter place
about noon. The train contained five passenger cars, and
Mrs. Matteson and her daughter were in the rear car. Near
Oneida station, the train, when running at the rate of about
thirty miles an hour, was thrown from the track, in conse-
quence of the insecure condition of a part of the superstruc-
ture of the road, which had been repaired that morning by
the defendants' workmen. Testimony was given, on the part
of the plaintiff, tending to show that, by the concussion thus
produced, Mrs. Matteson was thrown from the seat to the
floor, with her head against the car, and that she received
some slight external injuries upon her limbs. The plaintiff
claimed that she also sustained internal injuries of a serious

and permanent character, and this claim gave rise to the principal questions litigated on the trial.

When the plaintiff rested his case, the defendant moved for a nonsuit, on the grounds: 1. That the plaintiff had failed to make out a cause of action; 2. That there was no evidence to be submitted to the jury that Mrs. Matteson was injured while riding in the defendants' car; 3. That the simple fact that she was in the car at the time of the accident will not authorize the jury to find that she was injured; 4. Evidence that she gave indications of injury after she returned home will not authorize the jury to presume that she was injured while on defendants' car. The plaintiff must show positively that she was thus injured, not that she might have been. The motion was denied, and the defendants excepted.

Testimony was then given, on the part of the defendants, to which the plaintiff gave testimony in reply, and, at the close, the defendants renewed the motion for a nonsuit, on the grounds above stated, and an additional ground, which it is not necessary to state. That motion was also denied, and the defendants excepted.

Several exceptions were taken by the defendants to the rulings of the judge upon questions of evidence.

The jury gave a verdict for the plaintiff of $1,623. The judgment entered thereon was affirmed on appeal to the General Term, and the defendants now appeal to this court.

The case is submitted on printed points.

*J. T. Spriggs* and *F. Kernan*, for the appellants.

*Waterman & Hunt*, for the respondent.

SMITH, J. The plaintiff's claim for damages was based principally upon the hypothesis that, by the concussion sustained by his wife in the defendants' car, she received an internal injury, which so affected her as to produce a partial paralysis, impairing, seriously and permanently, her health and physical capacity, rendering her unable to labor, or even to walk without assistance, and thereby subjecting him to great pecuniary loss and expense. In support of that theory,

the plaintiff introduced testimony tending to show the nature and cause of the accident, the force of the concussion, its immediate and visible effects upon Mrs. Matteson, and that, previous to the accident, she attended actively and efficiently to her household affairs, although she was subject to occasional sickness, but that, since the accident, she had lost, to a great extent, the use of her limbs, her general health was greatly impaired, and she was unable to do any work. The testimony respecting her health and physical capacity covered a period of several years immediately preceding the trial, and including the time of the accident. In respect to her condition immediately before and after the accident, it appeared that, in the latter part of June, she visited some relations in the county of Oswego; that, on reaching the city of Oswego, she walked a mile from the railroad station to the house of a friend; that the next morning she rode by stage and wagon fourteen miles to the house of her sister, where she remained about two weeks; that, during her visit there, her health was good, she assisted her sister in her ordinary domestic work; and once she rode in a wagon six miles to visit another sister, and returned the same way; that, on the 6th of July, she rode to Oswego in a wagon, about noon, and after tea walked with some friends, two miles or more, in and about the city; and, on the next morning, she walked a mile to the railroad station, and took the cars at eight o'clock to return home; that, after the accident, she was brought to Utica upon the train, and was carried in a wagon a short distance up the street, where she took the stage the same afternoon and was carried to a neighbor's, where she waited for a conveyance from home; that, at the neighbor's, she appeared very ill and exhausted, and seemed to grow worse as she stayed; and that, on reaching home, she was helped out of the wagon by two persons, supported into the house, laid upon a lounge with pillows, a physician was sent for, and, from that time to the trial, she was under medical treatment.

Dr. Collins, who visited her, on the day after the accident, testified that he found her in an exhausted condition, with a

feeble pulse, and suffering from pain in the head and in the regions of the stomach.

Dr. Budling, who visited her on the 10th of July, and daily thereafter for several weeks, testified that, at his first visit, her pulse was small and frequent; she complained of pain in her head, back and limbs; her breathing was not natural; she complained of numbness in her limbs, and inability to use them, indicating a tendency to paralysis; that those symptoms afterward increased and continued to the time of the trial; that he thought her difficulty was an injury to the spinal column, which, he said, may be produced by a severe jar in any form, and that, in his opinion, it was produced by violence, and would be permanent. This testimony was corroborated by that of two other physicians.

On the part of the defendants, evidence was given, tending to show that, before the accident, Mrs. Matteson was in poor health and afflicted with maladies of long standing; that, after the accident, she had habitually performed household labor, and that many of her indications of feebleness and loss of the use of her limbs were feigned.

This outline of the case gives a general view of the points contested on the trial, and of the character of the testimony by which the plaintiff attempted to establish his claim. All the questions suggested in the points, submitted by the counsel for the appellants, as to the credibility of the plaintiff's witnesses, and the probability of their statements, of course belonged to the jury, and were conclusively disposed of by them. Assuming that the witnesses were truthful, and that their testimony established the fact that Mrs. Matteson was suffering from an affection of the spinal column, which tended to paralysis, it was impossible to prove, by direct evidence, and with absolute certainty, from what cause the affection proceeded. Something was necessarily left to inference; not a merely speculative, but a rational inference, based upon all the circumstances of the case. The testimony, including that of the physicians, authorized the jury to find that, previously to the accident, Mrs. Matteson was free from a disease of the spine, tending to paralysis; that, immediately

thereafter, a disease of that nature began to be exhibited, and was, subsequently, manifested in increased force until the time of the trial; that, on the occasion of the accident, she received a jar or blow that was sufficient to produce such disease; and that no other cause was shown to which it could be reasonably ascribed.   If the jury were satisfied of the truth of these positions, they were fully authorized, if not required, to find that the plaintiff's hypothesis, respecting the nature and effects of the injury produced by the accident, was correct.

The motions for a nonsuit were, therefore, properly denied, and the verdict should not be disturbed, unless the judge erred in the reception or rejection of testimony.

It is insisted, by the counsel for the appellants, that the court erred in permitting certain statements, made by Mrs. Matteson in October, 1859, and, subsequently, to Drs. Preston and Wolcott, to be given in evidence.   The statements referred to were expressions of pain and suffering, made to the physicians when they were examining her for the purpose of learning her physical condition.

It became material to show the bodily health and condition of Mrs. Matteson from the time of the accident to that of the trial.   Upon that point, the most satisfactory species of testimony was that of physicians, who saw and examined her at different times during that period, with a view to ascertaining her condition; her complaints and representations of pain and suffering, together with her appearance and conduct, necessarily formed the basis of their judgment.   Such complaints and representations are original testimony, and not hearsay. (1 Greenl. Ev., § 102.)   This is the case, notwithstanding the examinations referred to were made by the physicians after the suit was commenced, and with a view to their testifying therein as to the result of their examinations.   It does not appear that the patient knew that such was their object, and if she did know it, the jury were to judge whether her representations were false, or her testimony collusive. (28 N. Y., 344; 32 id., 600.)

So, the declarations of Mrs. Matteson as to her health and condition, made to her neighbor, Mrs. Bentley, on the Saturday after her return from Oswego, were properly received. They were not to be rejected because made to a person not a physician. (1 Greenl. Ev., § 102; 1 Duer, 240; *S. C.*, 1 Kern., 416; 28 N. Y., 344.) Besides, they were called out on the cross-examination of Mrs. Bentley, who had testified in chief to the condition of Mrs. Matteson at the same interview, when the declarations were made.

It is next insisted that the opinions of the physicians, which were received in evidence, were not competent. They related to three distinct points: 1. The nature of the affection with which Mrs. Matteson was suffering; 2. Its cause — that is, whether it was produced by violence or disease; and, 3. Whether it was curable or permanent. All these subjects were peculiarly within the province of the medical skill and science; the witnesses were practicing physicians, and they had frequently seen Mrs. Matteson, and examined her condition and symptoms, with a view to determining these very points. Their opinions, so far as they were based upon facts within their own knowledge and observation, were clearly admissible. (1 Greenl. Ev., § 440.) In two instances, the questions were, in part, hypothetical. Dr. Preston had testified that he first knew Mrs. Matteson eight or nine years before the trial, but had not seen her from that time till the first of October, 1859; that he then examined her thoroughly, and also in the following February and June; and that he saw her two or three times during the week before the trial. The following question was then put to him: "Suppose Mrs. M. in good health on the 7th of July, and then in the condition you find her in October, would a sudden jar account for her symptoms?" The witness answered: "I don't know of anything that would be as likely to account for it as that." He was then asked: "If well on the 7th of July, without an accident, would the occurrence of disease between these periods account for her condition?" He answered: "I think it would not." The objections to these questions related to their competency, and not to their form. The hypothesis

involved in them, as to the state of Mrs. Matteson's health before the 7th of July, was one which the plaintiff had a right to assume from the testimony of other witnesses in the case, and the questions were proper.   The true rule on the subject was laid down by Greenleaf in his Treatise on Evidence.   He says : " Such opinions (" referring to the opinions of experts ") are admissible, though the witness founds them, not on his own personal observation, but on the case itself, as proved by other witnesses on the trial.   *   *   And, if the facts are doubtful and remain to be found by the jury, although it has been held improper to ask an expert, who has heard the evidence, what is his opinion upon the case on trial, yet he may be asked his opinion upon a similar case hypothetically stated." (Vol. 1, § 440; 32 N. Y., 598.)

With a view to establishing the amount of damages, the question, " What could such services as Mrs. Matteson's be procured for ? " was competent, the witness having stated that he was acquainted with the value of services, and having stated, also, his means of knowledge. The value of the services of different individuals varies, and the plaintiff was not confined to the average value, if the services of his wife were worth more than that.

There are no other questions in the case requiring examination.

The judgment should be affirmed.

All the judges concurring, except Hunt, J., who having been counsel, took no part in the case.

Judgment affirmed.