CATHARINE WALDELE, ADMINISTRATRIX, ETC., OF JOHN WALDELE, DECEASED, PLAINTIFF, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, DEFENDANT.

*Negligence — when a question for the jury — declarations of deceased — when inadmissible.*

The plaintiff's intestate, a deaf-mute, on approaching the defendant's tracks, at a crossing in a public street, in the city of Rochester, at about midnight, found a freight train passing; he waited ·until it had passed, stepped upon the track to cross, and was struck and killed by an engine following the freight train, at a distance of about fifty feet. The night was very dark, and the engine was running backwards, with no light upon its tender, at the rate of about twenty miles an hour, though it was prohibited by a city ordinance from running at a greater rate than eight miles an hour. The evidence tended to establish the fact that a flagman was kept at the crossing, but failed to show he was there at the time of the accident.

*Held,* that the question of defendant's negligence and of plaintiff's contributory negligence should have been submitted to the jury, and that it was error to ·direct a nonsuit.

Upon the trial the plaintiff offered to prove declarations of the deceased, as to the manner in which the injuries were received, made shortly before his death, and some two hours after the accident.

*Held,* that the declarations were not admissible as part of the *res gestæ* nor as declarations made *in extremis.*

Declarations made in expectation of immediate death are only admissible on the trial of an indictment for homicide.

MOTION for a new trial, on exceptions ordered to be heard in the first instance at the General Term, after a nonsuit directed at the circuit.

The action was brought to recover damages for the negligent killing of the plaintiff's intestate by the defendant.

At the trial the plaintiff was nonsuited. The motion for a nonsuit was rested upon two grounds, viz.: That the evidence failed to establish that the negligence of the defendant produced the death of the deceased, and .that the evidence failed to make out that the negligence or want of care of the deceased did not contribute to his death. There was a request, on the part of the plaintiff, that both the questions be submitted to the jury, which was denied.

The deceased, John Waldele, died about three o'clock ' on the morning of the 2nd of July, 1876, from injuries received, about midnight, on the crossing of Kent street, a public street in the city of Rochester, which crosses the defendant's Buffalo branch. There was evidence tending to show that the deceased approached the railroad about twelve o'clock, and as he reached the tracks he found a freight train passing east towards the depot; that he halted until it had passed, and then stepped upon the track, and was struck by a tender and engine, which were backing up and following the freight train, at a distance of about fifty feet from it.

The night was very dark and the tender had no headlight or lantern upon it to warn or inform travelers of its approach, and there was no street light near the crossing. The deceased was a deaf mute, and after he got upon the track was struck and thrown some distance to the south side of the track near a store on Kent street; he was then picked up and taken to the hospital, where he died in about three hours from the time he received his injuries. He was about twenty-four years old, with good eyesight, sober and active.

There was evidence tending to establish that the freight cars, and the tender and engine following it, were running at the rate of twenty miles per hour; also that the defendant, by an ordinance of the city, was prohibited from running its train at a greater rate' than eight miles per hour. The evidence did not establish that any flagman was at the crossing, though it tended to establish that it was a flag crossing, and that the flagman was called, after the injuries, from his "shanty" to bring a light to enable the persons, who heard the moans of the deceased, to distinguish whether it was an injured or a drunken man who made them.

Upon the trial the plaintiff offered to prove the declarations of the deceased, as to the manner of receiving the injuries, made just before, and when he expected death.. They were excluded and the plaintiff excepted to the ruling.

*William Graebe* and *John H. Martindale*, for the plaintiff. The declarations of the deceased were admissible, and the court erred in excluding them. (*Insurance Co.* v. *Mosley*, 8 Wall.. 397;

*Commonwealth* v. *Pike*, 3 Cush., 181; *Swift* v. *Mass. Life Ins. Co.*, 63 N. Y., 190; *Matteson* v. *N. Y. C. R. R. Co.*, 35 id., 487.)

*Edward Harris*, for the defendant. This evidence was not admissible as the dying declaration of the deceased. Such declarations are not admitted in civil cases. (*Wilson* v. *Boerem*, 15 Johns. R., 286, 291; *Daily, Admr.*, v. *N. Y. and N. Haven R. R. Co.*, 32 Conn. R., 356; Best. on Ev. Am. Notes by H. G. Woods, vol. 2, p. 913 [marg. 627], § 505.) Nor as a part of the *res gestæ*, for the very obvious reason that it was proposed to prove a mere conversation between the witness and the deceased — a mere narration of the manner of the injury, at a time considerably subsequent to the event and at another place. (*Moore* v. *Meacham*, 10 N. Y. R., 207; *The People* v. *Davis*, 56 id., 95, 102; Best on Ev., vol. 2, p. 886, *n. a.*) Such declarations were incompetent as proof of the manner of the injuries. (*State* v. *Davidson*, 30 Vt. R., 377; 2 Redfield on Railways, § 186.)

HARDIN, J.:

It was fairly inferable from the evidence that when the deceased approached the crossing he found it obstructed by the passing train of freight cars, and that when the last car passed, and a vacant space was presented, that he stepped upon the track without any knowledge or apprehension of the approach of the engine and tender. The facts would have warranted the jury in finding that it was natural and reasonable for him to suppose that when the freight train had passed, and the track uncovered, that it was suitable and safe for him to cross. Being a deaf man he did not hear the approach of the engine and tender, and there being no light upon them to warn him, as the jury might have inferred, he was not made aware of their approach. The running of this engine, at a rate of speed, beyond the ordinance rate, without any light stationed upon the tender, in a populous city, over numerous crossings, in such close proximity to an advancing train, under the circumstances disclosed by the evidence, was so exceptional and unusual, as to present a fair question as to negligence, for the consideration of a jury.

The question as to the defendant's negligence should have been submitted to the jury, instead of being passed upon as a matter of law. (*Massoth* v. *Del. and Hudson Canal Co.*, 64 N. Y., 524; *Jetter* v. *N. Y. and Harlem R. R. Co.*, 2 Keyes, 154; *Maginnis* v. *N. Y. and H. R. R. Co.*, 52 N. Y., 215.) Was the deceased free from contributory negligence at the time of the accident ? We must assume that the law requires him to make a vigilant use of his senses to apprehend the situation accurately before determining to venture to cross the tracks.

He did not possess the sense of hearing, and, therefore, could not rely upon any sounds as a means of knowing that it was safe. But he had a right to pass along the street, and to cross the road, using such care as he was capable of.; necessarily, he would be obliged to rely upon his eyesight, to a greater extent than one having his sense of hearing. He was, therefore, called upon to look up and down the track before venturing upon it. He had seen the freight train pass ; he had seen that there was an unobstructed space left, and if he looked in the direction of the approaching engine and tender, and did not see them, he naturally and prudently might have ventured to pass over the track. The case is without positive evidence upon the subject of whether he looked before stepping upon the track. But there is evidence tending to show it was a very dark night ; that there was no light upon the backing tender ; that it was passing at the rate of twenty miles per hour, and in the neighborhood of fifty feet behind the advancing train of freight cars.

Necessarily, the witnesses, who state the distance between the freight cars and the engine and tender, give an estimate of the intervening space. It may have been less or more than fifty feet, and yet they guess or estimate as best they can that the distance was about fifty feet. Recognizing the rule that the plaintiff's case must show by direct evidence, or by such circumstances as justify a fair inference, that the deceased was free from contributory negligence, we think that the case should have been submitted to the jury upon this branch. In the *Massoth Case* (*supra*) Judge ALLEN says : " It is only where it clearly appears from all the circumstances, or is proved by uncontroverted evidence, that the party injured has by his own acts or neglect contributed to

the injury, that the court can take the case from the jury, and nonsuit the plaintiff."

The instances in which nonsuits have been sustained, by reason of the contributory negligence of the plaintiff or party sustaining injury, have *been exceptional* cases in which the court has adjudged that *such negligence* was *conclusively* established, by evidence which left *nothing* either of *inference* or of fact in doubt or to be settled by a jury. How can we say that the deceased did not look in the direction of the approaching engine and tender, and by reason of the darkness of the night, and the absence of a proper signal or light, fail to apprehend its approach, at the critical moment when he passed upon the track? Does the evidence sustain the inference that he acted with ordinary caution and prudence under the circumstances, known and apparent at the moment the freight train had passed the crossing, and he stepped upon the track and was struck by the "wildcat," or backing engine?

These, in our judgment, were proper questions for the consideration of the jury. (*Gray* v. *The Grand Trunk R. R. Co.*, 8 Weekly Dig., 371; *Terry* v. *Jewett*, 17 Hun, 395; *Eagan* v. *Tucker*, 18 id., 349.) The court erred in refusing to submit the case to the jury and in nonsuiting the plaintiff, and a new trial should be ordered.

The declarations of the deceased, after he was taken to the hospital, as to the manner in which he received the injuries, were not admissible. It is well settled that dying declarations can be received only on the trial of an indictment for homicide. (*Wilson* v. *Boerem*, 15 Johns., 287; *People* v. *Davis*, 56 N. Y., 95.) Such evidence is received as an exception to the general rule, that hearsay evidence is not admissible, only upon the principle which protects human life by punishing those who commit homicide. Such crime is often committed when none but the victim and his assailant are present, and his declarations when *in extremis* — conscious that he is about to die — are received to prevent a failure of justice. (1 Greenl. on Evi., § 156, 225, and cases cited [*supra*]; not so in a civil case.)

Nor were such declarations receivable as a part of the *res gestæ.* They were made about two hours after the injuries were inflicted, and after the injured party had been removed from the place of

the injury to the hospital; they were too remote and narrative. (_Trimmer_ v. _Trimmer_, 13 Hun, 182; _Ins. Co._ v. _Mosley_, 8 Wall., 400; _Smith_ v. _Webb_, 1 Barb., 230; _Matteson_ v. _R. R. Co._, 35 N. Y., 487.)

A new trial should be ordered, with costs to abide the event.

TALCOTT, P. J., and SMITH, J., concurred.

New trial ordered, costs to abide event.