## Supreme Court—General Term—Fifth Department.

### July, 1885.

### PEOPLE v. MURPHY.

ABORTION —DECLARATIONS AND ACTS OF CO-CONSPIRATOR.

Upon the trial of the defendant jointly indicted with another for abortion, the prosecution proved that defendant took the girl to the doctor to be operated upon, to produce abortion; that she was operated on when so taken by defendant; that defendant then took the girl to one Mrs. T., with whom he arranged to take care of her until after the delivery; that in the house of Mrs. T. the girl was delivered of a fœtus. *Held*, that conversations while the girl was in the house, and before the delivery, between a witness and Mrs. T.

in relation to the girl and her state, were admissible against defend
ant as declarations of a co-conspirator made in pursuance of the
original and concerted plan.

Declarations and acts of a co-conspirator, made in furtherance of the
prosecution of the common object of the conspiracy or constituting
a part of the *res gestæ* of some act done for that purpose, are the acts
and declarations of all, and are admissible against them.

A witness for the prosecution testified that when the girl was in the
house, and before the delivery, she told Mrs. T. she thought there
was something queer about the girl ; thought it was not all right;
and that if the girl was in her house she would send her out. To
this defendant made no reply. This evidence was objected to by
defendant on the ground that T.'s silence was an admission that
there was something wrong about the girl. *Held,* that these remarks
as to the conduct and character of another person did not call for an
answer on the part of Mrs. T. But if the view taken by appellant
is correct, then the silence of Mrs. T. as to the true condition of the
patient was one of the things contemplated in the original plan, and
as such admissible against her co-conspirator, the defendant.

An answer not responsive to a question, cannot be objected on appeal
where no motion to strike the same out was made upon the trial.

The granting of a new trial by the appellate court, under § 527 of the
Code of Criminal Procedure, whether an exception shall have been
taken on the trial or not, on the ground that justice requires it, is a
discretionary power not to be exercised unless it is apparent the
defendant has been prejudiced by the evidence given, or that its
exclusion would probably result in his acquittal.

A doctor, a witness for the prosecution, testified that from his examina-
tion of the girl and from the history of the case as he got it from the
girl when under his care, an abortion had been performed. This
was objected to by the defense as hearsay, and privileged communi-
cation, and because it involves the history of the case which had not
been disclosed on the trial. This history had been called for by the
prosecution and excluded by the objection of the defense. *Held,*
that defendant could not avail himself of the privilege of the girl,
and that while the history of the case should have been given,
defendant, having caused its exclusion, could not object that it was
not given.

Whenever the bodily or mental feelings of a person are material to be
proved, the usual expression of them, made at the time in question,
is competent evidence, and in the present case the girl's statement
to the doctor, having been, as he testified, limited to her feelings and
condition, was admissible.

APPEAL by defendant William T. Murphy from a judgment
of the Court of Sessions of Monroe county, Hon. JOHN S.

MORGAN, presiding, of May 31, 1884, convicting defendant of abortion.

The facts appear in the opinion.

*Stull & Bennett* (*Horace L. Bennett*, of counsel), for defendant.—I. It was error to allow the physician who attended the girl who was alleged to have had an abortion performed on her, to disclose information of her condition acquired while attending her; to allow him to give an opinion, based on that information and on the inspection of a fœtus produced but not shown to have passed the girl, that an abortion had been induced; and to allow him to give an opinion, based on the elements aforesaid and the clinical history of the case (or what she told him had occurred), that an abortion had been induced.

The evidence showed clearly that the physician, when the information was acquired by him to which he testified on the trial, was attending the girl professionally, and such information the physician was prohibited from disclosing without the express permission of the patient. *Code Civ. Proc.* §§ 834, 836; Grattan *v.* Mut. Ins. Co., 80 *N. Y.* 281, 296; Edington *v.* Mut. Life Ins. Co., 67 *N. Y.* 185, 194; Dilleber *v.* Home Life Ins. Co., 69 *N. Y.* 256; People *v.* Stout, 3 *Park.* 670, 675. Nor can the fact that the physician was in the employment and pay of the district attorney, and the acceptance of his treatment by the girl with that knowledge, be construed as a waiver by her of the prohibition.

The privilege being personal to the patient, can a defendant in a criminal case, not the patient, avail himself of it to exclude evidence against him? The answer to this is that the cases establish that the statute may be interposed by a person who is neither the patient nor his representative, and under circumstances when to exclude the evidence would be to assist in defeating justice and in perpetrating a fraud. In none of the cases cited is the nature of the action or the person who interposed the statute treated as having any bearing upon the question. The discussion in each case is whether the relation of physician and patient existed. Edington *v.* Mut. Life Ins. Co.,

*ante;* Dilleber *v.* Home Ins. Co., *ante;* Bacon *v.* Frisbie, 80 *N. Y.* 394, 399; Hunn *v.* Hunn, 1 *T. & C.* 499; Sloan *v.* N. Y. Central H. R. Co., 45 *N. Y.* 125; Grattan *v.* Mut. Life Ins. Co., 24 *Hun,* 43.

This evidence was also inadmissible because based on facts not disclosed. When an expert attempts to speak from personal examination he must state the facts on which he bases his opinion. *Abb. Trial Ev.* 600; Wendell *v.* Mayor, 39 *Barb.* 329; affirmed, 4 *Abb. App. Dec.* 563.

The offer of the district attorney to disclose the facts was only an offer to disclose them by the doctor himself, and this was prohibited by §§ 834, 836 of Code Civil Procedure, and also all declarations made by the girl to the doctor, being hearsay, he could not have testified to them unless they were statements in regard to her feelings or symptoms or constituting part of the *res gestæ.*

That part of the girl's statements were not in regard to her feelings and symptoms is apparent from the doctor's evidence. Q. " Then you depend in part on what she told you in forming the opinion you have expressed." A. " Yes, sir." Q. " What she told you as to what had occurred." A. " Yes sir, the clinical history of the case. I wrote down part of her statement and testified to it in the police court; and that included how she come to be there and what happened since she came to that house."

II. It was error to allow the declarations and silent admissions of Mrs. Tripp, the alleged accomplice, made after the alleged commission of the crime, to be proved against the defendant.

The statement of Mrs. Tripp, that the girl was a friend of hers and came there on a visit, was, according to the theory of the prosecution, false, and made to conceal the real purpose for which the girl was there. The silence of Mrs. Tripp, when the witness told her that she thought there was something queer about the girl, and that she thought it was not all right, and that if the girl was in the house she would send her out, wouldn't have her in it, was an admission of the truth of the charge made by the witness. Kelley *v.* People, 55 *N. Y.* 565; Armsby *v.* People, 2 *T. & C.* 157; Jewett *v.* Banning, 21 *N.*

*Y* 27; McGuire *v.* People, 3 *Hun*, 213; People *v.* Willett, 92 *N. Y.* 29; 1 *N. Y. Crim. Rep.* 355.

This evidence was admitted under the erroneous idea, that it was a part of the *res gestæ.* The theory of the prosecution is that the crime continued from the time of the alleged operation until the delivery of the fœtus. This is not so. The crime was committed, if at all, at the time of the operation, and was then complete. All the conversation of this witness with Mrs. Tripp, was after the operation had been performed (if performed at all), and after the girl's arrival at Mrs. Tripp's house. It was therefore not part of the *res gestæ.* People *v.* Davis, 2 *T. & C.* 212; affirmed, 56 *N. Y.* 95, 101; Maine *v.* People, 9 *Hun*, 113, 119.

*J. W. Taylor*, district attorney, for the people, respondent. —(The grounds taken by the respondent, being fully sustained and covered by the opinion, will not here be given.) As to the physician's statement mentioned in the first paragraph of the appellant's points, the respondent cited 1 *Greenl. Ev.* § 102; Pierson *v.* People, 79 *N. Y.* 424; 1 *Phill. Ev.* 3d Am. ed. 192; Aveson *v.* Lord Kinnaird, 6 *East*, 192; Morrissey *v.* Ingham, 111 *Mass.* 63; 2 *Best Ev.* 514, note; Barber *v.* Merriam, 11 *Allen*, 324; *Roscoe Crim. Ev.* 7th ed. 27–29; People *v.* Williams, 3 *Park.* 100.

HAIGHT. J.—The defendant was indicted jointly with one Dr. Sherman. The evidence on the part of the people tended to show that the defendant went to Dr. Sherman and arranged with him to operate upon the person of Louisa Schlaefer; that subsequently and on January 26, 1884, he took the girl to the doctor's office; that the doctor took her into another room and operated upon her; that the defendant then took the girl to Mrs. Tripp and arranged with her to board and take care of her until after her sickness. Thereafter, and on the morning of February 1, a fœtus was born which was subsequently delivered to the district attorney and by him to Dr. Harriman. This appeal is taken upon exceptions only.

Upon the trial, Sophia Pitcher was sworn as a witness on behalf of the people. She testified that she was a servant girl

in the employ of Mrs. Tripp and slept in the same room occupied by the Schlaefer girl. She testified, that she first had a talk with Mrs. Tripp about the girl on the same day that she was brought there. The district attorney then asked as follows: Q. "Did she state what she was brought there for?" Defendant's counsel objected. Overruled, and defendant excepted. A. "Yes, Sir, the same day she was brought there in the afternoon." Q. "Now, what did she say?" Defendant's counsel objected. Objection overruled, and exception. A. "She said she was a friend of hers, and came there for a rest. I don't think there was anything more said about it until after the girl was taken sick, on Tuesday, towards night; on Wednesday, I think, I spoke to Mrs. Tripp about the girl being there; thar was before this person was there in the night time." Q. "What did she say at that time?" Defendant's counsel objected to the question as immaterial and incompetent and calling for hearsay evidence. The court overruled the objection, and defendant's counsel excepted. A. "She didn't make me any answer; I said, I thought there was something queer about that girl; thought it was not right; and she didn't make any answer. The same subject was mentioned again on Thursday, before the man was there in the night time." Q. "What was said?" Defendant's counsel objected to the evidence, as immaterial and incompetent, and hearsay. Overruled, and exception by defendant. A. "I said, I thought if she was in my house, I would send her out and would not have her in it, and she didn't make me any answer; I asked her how the girl was, and she said, 'all right;' she said on Thursday she was going for a doctor; that was before the man was there that night, sometime in the afternoon."

It is contended on the part of the appellant, that the admission of this evidence was error; that it was not part of the res gestœ, and was not competent as the declarations of a co-conspirator.

The defendant, who took the girl to the doctor, and arranged with him to operate upon her and produce an abortion, the doctor who undertook the job, and the woman who, knowing the facts, undertook to care for the girl until she was delivered, and thus hide the crime—all became co-conspirators,—and the acts and declarations of each in pursuance of the original con-

certed plan, and with reference to the common crime, are, in contemplation of law, the acts and declarations of all, and are therefore original evidence against each of them; but to make a declaration competent, it must have been made in the further-ance of the prosecution of the common object, or constitute part of the *res gestœ*, of some act done for that purpose. *Greenleaf Ev.* § 111; People *v.* Davis, 56 *N. Y.* 95–102.

It would consequently be competent to show anything that Mrs. Tripp did or said in reference to the girl, in her treatment or care of the girl, or in her attempt to hide the crime; and if she sent for a doctor, if she attended upon her in person during her sickness, if she attempted to hide the fœtus when born, or if she gave any direction in reference thereto—such acts or directions would be in reference to the original concerted plan, and be within the rule. In answer to the first question, she said that the girl was a friend of hers, and came there for a rest. This answer, it is claimed on the part of the appellant, was made to allay suspicion on the part of the servant girl, who was making inquiry in reference to the presence of this girl in the house. If so, then we are inclined to the opinion that it was but carrying out the original concerted plan for hiding the crime. After the girl was taken sick, the witness said that she thought there was something queer about the girl; thought it was not all right, and that if the girl was in her house she would send her out, etc. To these expressions on the part of the servant girl, Mrs. Tripp made no answer. It is now con-tended by the appellant that her silence was an admission that there was something wrong about the girl; but this, we are inclined to think, does not follow. No question had been asked her calling for an answer. Mrs. Tripp had not been accused by the witness of any crime or misconduct, and conse-quently the rule which prevails when a person is accused of crime or misconduct, and remains silent when there was an opportunity to deny the same, that that fact may go to the jury for its determination as to whether or not the individual, by such silence, intended to admit the truthfulness of the charge, does not apply. The statements of the witness pertain to the conduct and character of another person, whom Mrs. Tripp was not called upon to defend; consequently, her silence

tended to prove nothing. If, however, we are wrong as to the effect of this evidence, and the appellant is correct, Mrs. Tripp was at that time acting in reference to the subject which the defendant, her co-conspirator, had employed her to care for. Her silence, in reference to the true condition of the patient was one of the things contemplated in the original concerted plan. We are, consequently, of the opinion that the exceptions were not well taken.

The case of People *v.* Davis, *supra*, we do not regard as in conflict with this conclusion; on the contrary, it sustains the rule as we have stated it. In that case, a woman had been taken by the prisoner to the doctor's office. The doctor had operated upon her at his office to produce a miscarriage. After she had returned home, she related to her stepmother what had been done at the doctor's office, and how he did it. It was held in that case that her declarations were not competent. The decision, however, was placed upon the ground that the statement was a mere narration as to a past transaction; that one conspirator cannot, by a subsequent confession, bind his co-conspirator; that the declarations were not made as part of the original concerted plan, in reference to the common crime. In this regard the case is distinguishable.

But again, it may be argued that the declarations of the witness, to the effect that she thought that there was something queer about the girl; that she would not have her in the house, etc., were incompetent. This part of the answer was, however, not responsive to the question objected to, and no motion was made to strike it out. It is true, under section 527 of the Code of Criminal Procedure, this court has power to grant a new trial, if satisfied that justice requires it, whether an exception shall have been taken or not in the court below. The granting of a new trial, however, where no exception is taken, is discretionary. People *v.* D'Argencour, 95 *N. Y.* 624; 2 *N. Y. Crim. Rep.* 267; People *v.* Boas, 92 *N. Y.* 560; 1 *N. Y. Crim. Rep.* 287. This discretion, however, ought not to be exercised unless it is apparent that the defendant has been prejudiced by the evidence given, or that its exclusion would probably result in his acquittal. We are not satisfied that he was harmed or prejudiced by this statement.

After the discovery of the condition of this girl, and on February 2, the district attorney sent Dr. Harriman to take care of and treat the girl. He visited her upon that day, and upon several days succeeding, made an examination of her, had a conversation with her in which she told him her *feelings* and *condition*. He then prescribed for her and took charge of her as a physician. On the trial, he was sworn as a witness on behalf of the people, and was asked by the district attorney the following: Q. " On the personal examination that you made of the woman and of the fœtus, and the history of the case as you got it from her, what do you say now as to whether or not there had been an abortion brought about by artificial means ?" The defendant's counsel objected to the question as calling for hearsay evidence, and privileged communication, and on the further ground, that it involves the history of the case which has not been disclosed on the trial. The district attorney then asked him to state what the girl had said to him. To this the defendant's counsel objected, and the court sustained the objection, but permitted the witness to answer the former question, and the witness answered that an abortion had been produced.

It is contended, in the first place, that this evidence was privileged under section 834 of the Code of Civil Procedure. This question we regard as settled in the case of Piersons *v.* People, 79 *N. Y.* 424-432. In that case Withey was sick, suffering from poison which, it was supposed, had been administered to him. The doctor was called by the prisoner to examine the patient. On the trial, the doctor was called as a witness for the people, and was asked to state the condition in which he found Withey at the time, both from his observation and from what Withey told him. It was held, that the evidence was competent, and that the prisoner could not avail himself of the provisions of this section of the Code; that was not designed for that purpose.

Again, it is contended that there was not sufficient evidence that the fœtus examined by the doctor had passed the girl. We are, however, of the opinion, that the facts and circumstances disclosed were sufficient to authorize the jury to find as a fact that it had.

Again, it is urged that the physician had no right to base

his judgment upon the history of the case as he got it from the girl; that the history of the case had not been disclosed upon the trial. Undoubtedly, the history of the case should have been disclosed as stated by the girl, for that, in part, formed the foundation for the doctor's opinion; but, when this was asked for, the defendant objected, and the court sustained his objection. The defendant thus procured the exclusion of the evidence, and he can not now be permitted to avail himself of such exclusion. The doctor had previously testified, that the statement made by her was in reference to her feelings and condition. We therefore conclude that the statement was limited to her feeling and condition. If so, we think it was competent. The rule is,—wherever the bodily or mental feelings of an individual are material to be proved, the usual expression of such feelings, made at the time in question, are original evidence. 1 *Greenleaf Ev.* § 102. The statement, however, of the name of the individual who produced the injury, the instrument used, or the manner in which it was produced, would not be within the rule. Denton v. State, 1 *Swan*, 279; Chapin v. Inhabitants of Marlborough, 9 *Gray*, 244; Barber v. Merriam, 11 *Allen*, 322–324; Matteson v. N. Y. C. & H. R. R. Co., 35 *N. Y.* 487.

The statements of the girl, therefore, as to what had taken place at the doctor's office, the manner in which the miscarriage was produced, and so on, would not be competent for the physician to take into consideration in determining whether or not an abortion had been produced. If, however, her statements were confined to the locality of the pain, the condition of the injured parts, and so on,—as we conclude they were from what the doctor had testified to,—then the question was proper.

The judgment and conviction should be affirmed and the proceedings remitted to the court of sessions of Monroe county.

SMITH, P. J., BARKER and BRADLEY, JJ., concur.