THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY V. MARY JOHNS.

1. EVIDENCE, *Sufficient to Prove Culpable Negligence of Servants.* Where the evidence shows that three servants of a railroad company — a brakeman and two section foremen — in removing a trunk from where it lay on the company's station platform, which was covered with ice, to a baggage-car, slid it on the ice, and out of a straight line, and against the plaintiff, who was standing in plain view upon the platform, *held*, that the evidence was sufficient to prove culpable negligence on the part of the railroad company's servants.

2. SERVANTS, *Presumed to have Acted Within Scope of Authority.* And in such case, as such servants were then on the company's premises, performing this duty for the company, in the presence of other servants, and as they had performed similar services on prior occasions, *held*, that it will be presumed that they were acting within the scope of the authority given to them by the railroad company.

3. PERSONAL INJURIES; *Culpable Contributory Negligence, Not Shown.* Where an old lady went to a railroad station to assist friends, who intended to remove from the country permanently, to get to the station and upon a train then about to depart, and after bidding her friends good-bye, and after they had got upon the train, stood for about five minutes upon the station platform to see the train start and to bid her friends a last farewell, *held*, that while so standing upon the platform she was not by reason thereof guilty of such culpable contributory negligence as would prevent her from recovering for injuries received through the negligence of the railroad company; and *further held*, that no culpable contributory negligence in any respect was shown.

4. PRESENT PAIN; *Declarations of Party, as Evidence; No Material Error.* Declarations of a party with regard to a *present and existing* pain or suffering, or with regard to the *present* condition of the body or mind, may generally be shown by any person who heard the same; and *held*, that no material error was committed in this case by the admission of evidence tending to show the declarations of the plaintiff with regard to pain, suffering, and condition of the body.

*Error from Greenwood District Court.*

ACTION brought by *Mary Johns* against *The Atchison, Topeka & Santa Fé Railroad Company*, to recover damages for injuries received by her while standing on the railroad com-

pany's station platform at Severy, in Greenwood county, by reason of being struck and thrown down by the company's agents and servants in removing a trunk from the platform to the baggage-car of a train then standing at the station. The general verdict of the jury, and the special questions of fact presented to them, with their answers thereto, read as follows:

"We, the jury in the above-entitled cause, do find for the plaintiff, and we assess her damages at the sum of four thousand dollars."

Special questions of fact, and answers:

"1. If the jury find that the plaintiff was injured by the negligence of any of the employés of the defendant, they may state the names of such employés. A. Skidmore, Short, and Crowley.

"2. What are the actual damages which the plaintiff has suffered from the injury complained of, if the jury find she has suffered any? (This question the court refused to submit to the jury.)

"3. Is it not a fact that the plaintiff received the injury complained of upon a platform of a station belonging to the defendant and in its possession and under its exclusive control? A. It was at a platform and station belonging to and in possession and under control of defendant and St. L. & S. F. R. R.

"4. Was not the sole and only purpose of the plaintiff in being upon that platform and at that station the purpose of seeing friends off who were going upon a train of cars belonging to the defendant, going north upon that day? A. No.

"5. Is it not a fact that prior to receiving the injury complained of, the plaintiff had seen her friends, whom she was at the station for the purpose of seeing off, onto the cars, and had bid them good-bye, and had left the car on which they were on? A. No.

"6. Is it not a fact that a reasonable time had elapsed from the time she had bid good-bye to the friends she had come to the station to see off, to have enabled her to leave the station and platform before she received the injury complained of? If not, how long a time had elapsed? A. No; about five minutes.

"7. Did not the plaintiff, all the time she was at the station and platform prior to the time of her injury, know that

the platform upon which she was standing at the time of her injury was icy and slippery ? A. Yes.

"8. Did the plaintiff not know, prior to her injury, that the employés of the defendant were about to move two or more trunks from the point where the trunks were, (in the moving of which she received the injury complained of,) to put the same into the baggage-car on defendant's train at that time? A. Yes.

"9. Is it not a fact that the plaintiff, at the time of her injury, was standing on the platform of defendant's station at Severy at a point between where the trunk was before it was moved, (in the moving of which she received her injury,) and the door of the baggage-car into which the employés of defendant were attempting to put the said trunk ? A. No.

"10. Is it not a fact that there were at least three large trunks placed upon the platform of the station at Severy, at and prior to the time of the injury complained of, which were to be loaded into the baggage-car on defendant's train, which was standing by said platform at the time of such injury ? A. Yes.

"11. At the time the plaintiff received the injury complained of, had she any business of any kind to transact with the defendant or any of its employés at the station where she was injured ? A. No.

"12. What, if anything, prevented the plaintiff from seeing the movement of the trunk, (the moving of which caused the injuries complained of,) at and before the receiving of such injury? A. Nothing.

"13. Did not the plaintiff see the employés of the defendant when they caught hold of the trunk, (the moving of which caused the injury complained of,) at the time they caught hold of it to move it? A. Yes.

"14. Did not the plaintiff see the employés of the defendant as they were moving the trunk, (the moving of which caused the injuries complained of,) from the point where it was toward the baggage car ? A. Yes.

"15. If the jury answer the last question in the affirmative, they may state if the plaintiff did not see such employés moving the trunk toward her ? A. Yes.

"16. If the jury answer the last question in the affirmative, they may state if the plaintiff did not have time and opportunity to get out of the way of this trunk when she saw it first started toward her, if she had at that time desired to have gotten out of its way ? A. Yes.

"17. Was not the plaintiff, at the time of receiving the injuries complained of, through with all her business at the depot? A. No.

"18. Was not such platform level, and about sixteen feet wide? A. Yes.

"19. Had not the plaintiff bid good-bye to her friends who had taken the cars, some little time previous to the accident complained of? A. Yes.

"20. Did not the plaintiff, after the alleged injury, remain standing, looking at the train some ten minutes before it pulled out? If not so long, how long? A. Yes.

"21. Did the plaintiff, previous to leaving the platform that day, inform anyone how the accident happened, and if so, whom? A. No.

"22. Had the plaintiff any business on the platform that day, except going to see some acquaintances at the train? A. Yes; to assist her friends.

"23. How much damage, if you allow plaintiff any, do you allow her for the services of a physician? (This question the court refused to submit to the jury.)

"24. If you allow the plaintiff any damages for the services of a physician, who is the physician for whose services you allow her? A. (This question the court refused to submit to the jury.)

"25. The jury may state how long a time had elapsed from the time plaintiff had bid her friends good-bye to the time when she received her claimed injury? A. About five minutes.

"26. What was there which in any way would have prevented the plaintiff from leaving that portion of the platform which was between the three large trunks and the baggage-car into which they were to be loaded, after the men caught hold of the trunk which plaintiff claims struck her, and commenced to move it toward said baggage-car? A. Nothing, only she was not directly between them.

"27. How far would plaintiff have had to have moved from where she was standing at the time of injury to have got off from that portion of the platform which lay between the baggage-car and the trunk which she claims struck her before the same was moving? A. About twenty feet would have taken her past the baggage-car door.

"28. How long a space of time would it have taken the plaintiff to have left that portion of the platform referred to in the last question, after she saw or knew that the trunk

which she claims hit her was to be moved from the point where it was to the baggage-car? A. It would have taken her about one-half minute to have gone that distance.

"29. Is it not a fact that the plaintiff believed that the trunk, which she claims was pushed against her, was to be moved from the spot where she first saw it to the baggage-car north of her before it was actually taken hold of to be moved? A. Yes.

"30. If the jury answer the last question in the affirmative, they may state if it is not a fact that plaintiff knew that in order to move that trunk to the baggage-car that the employés would have to take the same either to one side of her where she was standing, or over the spot on which she was standing? A. Yes.

"31. What was the distance from the point where the three large trunks were standing on the platform, including the one which plaintiff claims struck her, before they were moved to the baggage-car into which they were to be loaded? A. About thirty-eight feet.

"32. What was the distance from the point where the three large trunks referred to in the preceding question were standing before the removal to the baggage-car to the point where plaintiff was standing at the time she claims to have been injured? A. About fifteen feet.

"33. What was the distance from the door of the baggage car into which these trunks referred to in the preceding questions were to be loaded, to the point where the plaintiff was standing at the time she claims to have been injured? A. About twenty-three feet.

"34. About how wide was the trunk which plaintiff claims struck her? A. About two and one-half feet.

"35. About how long was the trunk which the plaintiff claims struck her? A. About three and one-half feet.

"36. How many men had hold of the trunk moving it which plaintiff claims struck her, prior to its striking her, if it did strike her? A. Three.

"37. Which way was this trunk being moved which plaintiff claims struck her, prior to its striking her, as to being moved sideways or endways? A. Endways.

"38. How much space on the platform was necessarily occupied by this trunk and the men moving it, as they moved prior to the time plaintiff claims it struck her? A. About four feet in width.

"39. Did not the drayman who brought the trunks to the

station deposit them at a point about the middle of the platform? A. Yes.

"40. Was not the trunk which plaintiff claims injured her started from the point where the drayman had deposited it? A. Yes.

"41. Is it not a fact that the plaintiff, at the time of receiving the injury claimed to have been received, had bid good-bye to the friends she had come to the depot to see off, and was, just prior to the time of being struck, standing upon defendant's platform at its station in Severy, watching the men who were to move the large trunks from the place where they were on the platform to and into the baggage-car, to see them move them and place them in the baggage-car? A. Yes, and waiting for her friends.

"42. Did not the plaintiff see the men who moved the trunk, which it was claimed injured her, as they took hold of it and started it toward the baggage-car? A. Yes.

"43. Did any of the men engaged in moving the trunk, which plaintiff claims injured her, see plaintiff after starting the trunk toward the baggage-car and prior to striking plaintiff? A. We do not know.

"44. If the jury answer the last question in the affirmative, they may state which one of the employés saw plaintiff, prior to the time she was struck and after starting the trunk toward the baggage-car. A. ——.

"45. Was not the trunk, which plaintiff claims injured her, prior to her injury, pushed and shoved or pulled by the men hold of it from the point where it was started in a direct and straight line to the point where it was stopped at the moment plaintiff fell, if it was so stopped? A. Yes, or nearly so.

"46. Did not plaintiff see the trunk, which she claims injured her, and the men hold of it, from the very instant it started up to the time that she fell? A. We cannot tell.

"47. Did not plaintiff know, realize or believe that the men who had hold of this trunk did not see her and could not see her from the position of their bodies and heads from the time they started the trunk up to the time she fell? A. No, she did not know.

"48. What, if anything, prevented or would have prevented plaintiff from getting out of the way of this trunk, if she had made the attempt so to do, when she first saw that it was being moved toward her? State fully. A. Nothing.

"49. After plaintiff first saw that the trunk was started in her direction, did she not stand still, under the belief that the

men hold of the trunk would not run it onto her, although believing at the time that the men did not see her? A. She attempted to move back when they were within about six feet of her, but did not know whether they saw her, or not.

"50. Did plaintiff make any effort to get out of the way of this trunk, prior to its getting within six feet of her? A. No.

"51. If the jury answer the last question in the affirmative, they may state how many feet away from plaintiff the trunk was when she first made an effort to get away. A. ———.

"52. Did plaintiff make any other effort to get away except that of stepping back with her right foot? A. No.

"53. If plaintiff stepped back with her right foot, did she not step on her cloak with such foot? A. We do not know.

"54. If plaintiff stepped back with her right foot and stepped on her cloak, did that trip her in the least? A. We cannot tell.

"55. Did not the trunk, if it struck her at all, hit her on both knees so that it struck her with the same force on each knee? A. It did.

"56. In what position was plaintiff standing so that she could have her right foot stepped back out of the way of the trunk and yet have each knee struck with equal force by the trunk? A. Somewhat facing the trunk as she stepped back.

"57. Has not the plaintiff since her injury been visited on an average of once a week by Dr. McDonald? A. Yes.

"58. If the jury answer the last question in the affirmative, they may state if Doctor McDonald did not on each visit give her a different kind of medicine to take. A. We do not know.

"59. Were any of the parties hold of the trunk, except Skidmore, acting within the scope of their employment with defendant in helping to move such trunk, and if so, who? A. Yes; Crowley and Short.

"60. Were not each of the persons, except Skidmore, hold of the trunk at the time of plaintiff's injury, merely volunteers helping Skidmore? A. No.

"61. Give the name of each person helping to move the trunk at the time of plaintiff's injury. A. Skidmore, Crowley, and Short.

"62. Was not Skidmore's back to the plaintiff as the trunk was being moved, prior to and at the time plaintiff fell? A. Yes.

"63. If the jury find for the plaintiff, they may state what acts of negligence the defendant or any of its employés were

guilty of which produced the injury complained of, stating fully." (This question the court refused to submit to the jury.)

Upon this verdict and these findings the court, at the December Term, 1884, rendered judgment in favor of the plaintiff and against the defendant for $4,000 and costs. The defendant brings the case to this court for review. Other facts are stated in the opinion of the court.

*Geo. R. Peck, A. A. Hurd, C. N. Sterry,* and *Robert Dunlap,* for plaintiff in error.

*T. L. Davis,* and *T. J. Hudson,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: The facts of this case, stated briefly, are substantially as follows: On February 6, 1883, the plaintiff, Mrs. Johns, who was then about sixty-three years of age, went to the railroad station at Severy, Greenwood county, along with certain of her friends who were then about to start for Washington territory to make it their permanent home. She went along with her friends to assist them in getting to the railroad train and upon it, and to bid them good-bye. These friends were Mrs. Pitzer, who was also an old lady about the plaintiff's age, and Mrs. Pitzer's daughter and son-in-law, and their several children. This station is a union station or depot belonging to the Atchison, Topeka & Santa Fé Railroad Company, and the St. Louis & San Francisco Railroad Company. These two railroads cross each other at that place, at right angles, the Atchison, Topeka & Santa Fé railroad running north and south, and the other railroad running east and west; and the station is situated in the southwest angle formed by this crossing, immediately west of the Atchison, Topeka & Santa Fé railroad, and immediately south of the other railroad. A platform, about 16 feet wide and 195 feet in length, is situated between the station-house and the defendant's railroad track. This platform at that time was covered with ice, and had been in that condition for several days. The railroad train upon which the plaintiff's friends expected to

travel, and which consisted of an engine, a baggage-car and a passenger-car, was then standing on the defendant's railroad track, east of the station platform, and headed to the north. The plaintiff bade good-bye to those of her friends who were about to leave, and they, with other friends who did not intend to leave, went into the passenger-car. The plaintiff then stepped back about ten feet from the east edge of the platform, and opposite the coupling between the baggage-car and the passenger-car, and stood there on the platform for the purpose of waiting till the train should start, and to bid her friends a last farewell. There was a waiting-room in the station-house or depot, to which she might have retired if she had so chosen. There were also at that time two or three large trunks, belonging to "drummers," situated on the platform several feet south and slightly to the east of where the plaintiff was standing, which were to be removed and placed in the baggage-car, which was north and east of where the plaintiff was standing. This platform was slightly inclined downward from the west side to the east side. Three of the company's servants undertook to remove these trunks. They did not use trucks or any other vehicle or instrument of conveyance, but slid the trunks on the ice. In removing the first trunk, they struck the plaintiff and knocked her down, and in this manner inflicted the injury of which she now complains. The trunk itself was propelled against her. This occurred within five minutes after the time when the plaintiff had bid her friends good-bye. She saw the men removing the trunk, and watched them, not thinking, however, that they would run against her or molest her in any manner; but when they came within about six feet of her, she attempted to move out of their way, but did not succeed in doing so. The evidence did not show whether the men saw her or not until after she fell; but there was nothing to prevent their seeing her if they had looked in that direction. There was plenty of room on the platform, east of where the plaintiff stood, within which the trunk might have been moved without touching her. The only persons near her at the time, except the three men who were moving the

trunk, were a friend of the plaintiff, Mrs. Miller, and Mrs. Miller's little boy.

The case was tried before the court and a jury, and after the plaintiff had introduced her evidence, which tended to prove all the foregoing facts, the defendant demurred to the evidence upon the ground that it did not prove or tend to prove any cause of action; which demurrer the court overruled. No other evidence was introduced. The defendant then presented to the court 41 special instructions for the jury, and asked the court to give them to the jury, all of which the court refused, and gave only its own instructions. The defendant then presented 63 special questions of fact for the jury, and asked the court to submit them to the jury, all of which, except four, to wit, the 2d, 23d, 24th, and 63d, the court did submit to the jury, as requested. The jury found a general verdict in favor of the plaintiff and against the defendant, and assessed the plaintiff's damages at $4,000, and also gave answers to the foregoing special questions of fact. The defendant then moved for a judgment in its favor upon the special findings of fact, notwithstanding the general verdict; which motion the court overruled. The defendent then moved for a new trial upon various grounds; which motion the court also overruled. The court then rendered judgment upon the verdict and findings of the jury in accordance with the general verdict. Afterward the defendant made a case for the supreme court, and has brought such case to this court and asks for a reversal of the judgment below.

The first question to be considered in this court is, whether the plaintiff below introduced sufficient evidence to authorize the jury to find in her favor with reference to every essential fact constituting her cause of action. This question was raised in the court below by the demurrer to the evidence, by the motion for judgment on the special findings, and also by the motion for a new trial. The plaintiff in error, defendant below, claims that the evidence is insufficient, for the following reasons: (1) There was no evidence tending to prove any culpable negligence on the part of the defendant; (2) there

was no evidence tending to prove that the three servants of the defendant who moved the trunk were acting within the scope of their employment; (3) the evidence discloses culpable contributory negligence on the part of the plaintiff below. The first two points we think should be discussed together. Of course the plaintiff below knew the exact condition of the platform and its surroundings, and that the defendant's servants were moving the trunk toward her, for all these things were in plain view, and she had eyes; but so also did the defendant's servants know all these things, for they also had eyes, and probably fully as good ones as the old lady had; but if they did not know these things, then they were guilty of culpable negligence in not knowing the same. Presumably they knew that the plaintiff was standing on the platform where she stood, and that unless she hurriedly got out of their way they would run against her in moving the trunk in the direction in which they were moving it, and as rapidly as they were moving it on the smooth ice of that platform; but, as before stated, if they did not know the same, they were equally as guilty of negligence in running against the plaintiff, and in knocking her down, as though they had in fact known all about these matters. It was their duty to know these things. The three men who undertook to remove the trunk were a brakeman belonging to that train and two section-foremen at that place, all in the employment of the defendant. They had also all done similar work on several prior occasions; and being on the company's premises, performing this duty · of removing trunks for the defendant in the presence of other employés of the defendant, and having done similar work on prior occasions, it must be presumed that they were acting for the defendant, and within the scope of the authority given to them by the defendant. The defendant, then, is responsible for their negligence, and they were clearly guilty of culpable negligence. The question as to whether the plaintiff was guilty of contributory negligence was fairly submitted to the jury, and they found that

2. Servants, presumed to have acted within scope of authority.

1. Evidence, sufficient to prove culpable negligence of servants.

she was not guilty of any such negligence; and upon the evidence introduced, we think their verdict is correct. As the train upon which the plaintiff's friends were expecting to depart was soon to start, we do not think that the plaintiff was guilty of any contributory negligence in remaining on the platform, where she stood until the train started. She was not necessarily in any person's way, and such a thing is common at all stations on all railroads. The plaintiff certainly could not be considered as a trespasser upon the company's premises; and if not, then the defendant and its servants owed her the duty of exercising reasonable and ordinary care and diligence to avoid injury to her. We do not think they exercised any such care or diligence, but really they were guilty of gross negligence. The plaintiff was not standing in a straight line between the place where the trunks lay on the platform and the place on the platform from which they were to be taken into the baggage-car, and the men moving the trunk had to move the same out of a straight line, and up a slightly inclined plane, in order to strike the plaintiff. There was plenty of room on the platform, and in a straight line, within which the trunks might have been moved from where they lay to the baggage-car, without molesting the plaintiff.

*3. Personal injuries; culpable contributory negligence, not shown.*

The plaintiff in error, defendant below, also claims that the court below committed material error in permitting the following evidence to be introduced, to wit: Mrs. M. D. Thatcher was permitted to testify, over the objections of the defendant, among other things, as follows:

"Well, I only know what Mrs. Johns has told me of her suffering, and I have been called in there as a neighbor. She complained of the misery in her side, and she told me that she suffered a great deal with a numbness and a tingling sensation in her left side, I believe it was; and the other evening I was called over there, and she told me that she was suffering now a great deal with that feeling, and also a depression about her heart, she said, in her left side, and she had sent for the physician, I believe, that evening; and that was some of the symptoms, I believe, that she had; of some kind of

depression about her heart, a smothering, I think. . . . Mrs. Johns has complained of her limb and her foot to me."

Joseph H. Pitzer was permitted to testify, over the objection of the defendant, among other things, as follows:

"Q. Now, Mr. Pitzer, state to the jury what facts you may know with reference to her condition, with reference to her suffering and bodily pain and mental distress. A. I don't know anything, only what she has told me herself.

"Q. What have you heard her say about it? of what has she complained? A. She has told me frequently that she has suffered. She complained of her head and leg, having a great misery in it. She complained of misery in her side and hip."

On cross-examination he testified, among other things, as follows:

"Q. All you know about her suffering and pains since the injury, is what she has told you, is it not, Mr. Pitzer? A. That is all, sir."

We think it is well settled that it is incompetent to prove the declarations of an injured party, or of a party suffering from some cause, made after the injury has happened or after the cause of his suffering has occurred, with regard to the facts of the injury or the cause of his suffering. (*Roosa v. Boston Loan Co.*, 132 Mass. 439; *Morrissey v. Ingham*, 111 id. 63; *I. C. Rld. Co. v. Sutton*, 42 Ill. 438; *Collins v. Waters*, 54 id. 485; *Denton v. The State*, 1 Swan, [Tenn.] 279; *Spatz v. Lyons*, 55 Barb. 476.) And even proof of the declarations of a party, with regard to past suffering or pain, or past conditions of body or mind, is not competent. (*G. R. & I. Rld. Co. v. Huntley*, 38 Mich. 537; *Lush v. McDaniel*, 13 Ired. 485; *Reed v. N. Y. C. Rld. Co.*, 45 N.Y. 574; *Rogers v. Crain*, 30 Tex. 284; *Chapin v. Inhabitants of Marlb.*, 75 Mass. 244; *Rowell v. City of Lowell*, 77 id. 420; *Emerson v. Lowell Gas Light Co.*, 88 id. 146; *Inhab. of Ashland v. Inhab. of Marlb.*, 99 id. 48; *Ins. Co. v. Mosley*, 75 U. S. 397, 405.)

There are probably no authorities opposed to these propositions, and yet there are authorities which seem almost to oppose the last one, especially where the declarations are made to a physician or surgeon while he is examining the party as

a patient. (*Quaife v. C. & N. W. Rly. Co.*, 48 Wis. 513; same case, 33 Am. Rep. 821; *Barber v. Merriam*, 93 Mass. 322; *Fay v. Harlan*, 128 id. 244; *Gray v. McLaughlin*, 26 Iowa, 279; *Matteson v. N. Y. C. Rld. Co.*, 35 N. Y. 487; *L. N. A. & C. Rly. Co. v. Falvey*, 104 Ind. 409; same case, 23 Am. & Eng. Rld. Cases, 522; same case, 22 Cent. L. J. 322.)   Declarations, however, of a party with regard to a *present and existing* pain or suffering, or with regard to the *present* condition of the body or mind, may generally be shown by any person who has heard them. (*Ins. Co. v. Mosley*, 75 U. S. 397; *Hatch v. Fuller*, 131 Mass. 574; *Denton v. The State*, 1 Swan, [Tenn.] 279; *I. C. Rld. Co. v. Sutton*, 42 Ill. 438; *Collins v. Waters*, 54 id. 485; *L. N. A. & C. Rld. Co. v. Falvey*, 104 Ind. 409; same case, 23 Am. & Eng. Rld. Cases, 522; same case, 22 Cent. L. J. 322; 1 Greenl. Ev., § 102, and cases there cited; 1 Whar. Ev., § 268, and cases there cited.)   There are authorities seemingly opposed to this last proposition: *Reed v. N. Y. C. Rld. Co.*, 45 N. Y. 574; *G. R. & I. Rld. Co. v. Huntley*, 38 Mich. 537.

We think, however, that whenever evidence is introduced tending to show a real injury or a real cause for suffering or pain, as in this case, the declarations of the party concerning such suffering or pain while it exists and as simply making known an existing fact, should be allowed to go to the jury for what they are worth, and the jury in such a case should be allowed to weigh them and to determine their value.   If they were made to a physician or surgeon while he was examining the party as a patient, for the purpose of medical or professional treatment, and for that purpose only, the declarations would be of great value.   If, however, they were made at any other time or under any other circumstances, they might not be of such great value.   If made casually to some person not a physician, and with whom the party had no particular relations, they might possibly in some cases be of but very little or no value. (*Reed v. N. Y. C. Rld. Co.*, 45 N. Y. 574.)   Yet generally they should be permitted to go to the jury for what they are worth. (*Ins. Co. v. Mosley*, 75 U. S.

397; *Hatch v. Fuller*, 131 Mass. 574; *Rogers v. Crain*, 30 Tex. 284; *Matteson v. N. Y. C. Rld. Co.*, 35 N. Y. 487; *Gray v. McLaughlin*, 26 Iowa, 279; *Kennard v. Burton*, 25 Me. 39; *The State v. Howard*, 32 Vt. 380; *Lush v. McDaniel*, 13 Ired. 485.)

Also, if the declarations are made to a physician or other person merely for the purpose of obtaining testimony in the party's own case, they might be of very little value, and possibly might in some cases be wholly excluded. (*G. R. & I. Rld. Co. v. Huntley*, 38 Mich. 537.) But the mere fact that the declarations are made after suit has been commenced and while it is pending will not be sufficient to exclude the declarations, and generally they should be allowed to go to the jury. (*Barber v. Merriam*, 93 Mass. 322; *Hatch v. Fuller*, 131 id. 574.)

In the present case we cannot say that the court below committed any material error in admitting the evidence objected to. Everything that the witnesses, Mrs. Thatcher and Mr. Pitzer, testified to was proved by the competent testimony of other witnesses. The injury, the impaired health, the suffering, the pain, and the entire condition of the plaintiff's body were fairly shown by evidence that cannot be questioned, and very nearly all the declarations of the plaintiff, as testified to by Mrs. Thatcher and Mr. Pitzer, were in substance declarations of present and existing pain, suffering, and conditions of the body, and not narratives of past pain, or suffering, or conditions of the body; and to this extent they were unquestionably competent. Those declarations, if any, which were not concerning present and existing pain, suffering, and conditions of the body, were so small in amount and so trifling and insignificant in their influence, and were concerning matters which were so thoroughly and incontestably proved by other competent evidence, that their admission by the court could not be material error.

*4. Present pain; declarations of party as evidence; no material error.*

There are a few other questions presented by counsel, which we hardly think it is necessary to discuss. The special question of fact No. 63, which the defendant asked the court to submit to the jury, and which was refused, was sufficiently

covered by other more specific questions. Besides, that question might perhaps be objectionable under the rule stated in the case of *Foster v. Turner*, 31 Kas. 58, 60, *et seq*. The instructions refused, so far as they stated the law of the case, were sufficiently covered by other instructions given by the court.

The judgment of the court below will be affirmed.

All the Justices concurring.