# FEDERICO DIDRICKSEN ET AL.

*v.*

# AMERICAN RAILROAD COMPANY OF PORTO RICO.

Ponce, Law, No. 242.

1. The national employers' liability acts, both that of June 11, 1906, 34 Stat. at L. 232, chap. 3073, U. S. Comp. Stat. Supp. 1909, p. 1148, and that of April 22, 1908, 35 Stat. at L. 65, chap. 149, U. S. Comp. Stat. Supp. 1909, p. 1171, are constitutional as to, and are in force in, Porto Rico, the first being superseded only as to common carriers by railroad by the second. Ramirez v. Ponce R. & Light Co. ante, followed.

2. Notwithstanding that each of said acts of Congress provides that the liability shall be "to his or her personal representative," this does not necessarily mean that both of the parents of a deceased employee, who have been designated jointly by a court of competent jurisdiction as the personal representatives of the deceased, may not sue as plaintiffs.

3. The provisions of the national safety appliances act of March 2, 1893, 27 Stat. at L. 531, chap. 196, as amended by the act of April 1, 1896, 29 Stat. at L. 85, chap. 87, U. S. Comp. Stat. 1901, p. 3175, have been extended to common carriers by railroad in the territories, which includes Porto Rico, by the act of Congress of March 2, 1903, 32 Stat. at L. 943, chap. 976, U. S. Comp. Stat. Supp. 1909, p. 1143, and is in full force and effect in said district.

V. Porto Rico—26.

Didricksen v. American R. Co.

4. A civil engineer, in support of the accuracy of his plat offered in evidence, will not be permitted to state facts communicated to him by the station master of a railroad company regarding the *locus* and conditions of and surrounding an accident that occurred some time previously; the evidence of the station master himself is the best on that point.

5. Declarations self-serving in character made by an injured man as much as twelve hours after the accident that caused the injuries are not admissible.

6. Under authority of the national employers' liability acts, as they are purely compensatory, it is competent for the plaintiff to show that the deceased was a person of good and thrifty habits, his earning capacity, and the amount he contributed to the support of the party for whose benefit the suit is brought, but the wage rate at the time of the actual injury that resulted in the death is not the absolute criterion by which to measure such earning capacity. Whenever plaintiff has introduced evidence to show the good and thrifty habits of deceased, it is then competent for the defendant to show the contrary.

7. It is negligence *per se* for a railroad company to pile coal in the form of a wall so close to its tracks as to make it unsafe for its employees to couple cars in front of it.

8. Under § 3 of the national employers' liability act of April 22, 1908, contributory negligence, on the part of the employee does not bar recovery, but only reduces the damages in proportion to the negligence of the employee.

9. In actions under this latter employers' liability act, the employee cannot be held to be guilty of contributory negligence, or to have assumed the risks of his employment, where a violation by the employer of any of the safety appliances acts contributed to the injury.

10. Employers have by law imposed upon them the continuous duty to furnish their employees with a reasonably safe place in which to work and reasonably safe tools and implements with which to perform it.

11. Even under the national employers' liability acts, the burden is upon the plaintiff to show negligence in a defendant, either in fact or as matter of law, by their default under said liability acts.

12. An employee cannot recklessly and knowingly expose himself to unusual risk or danger, and recover for injury to himself occurring in consequence thereof, under the national employers' liability acts, no

Didricksen v. American R. Co.

matter what the default of the defendant may be as to a reasonably safe place to work in or safety appliances with which to work, any more than such employee could do so before the enactment of such liability acts.

Filed February 18, 1910.

Mr. José A. Poventud, attorney for the plaintiffs.

Mr. F. L. Cornwell, attorney for the defendant.

NOTE.—The instructions as given by the court, though somewhat disconnected, are here preserved because this is one of the first cases tried in the district of Porto Rico under the national employers' liability act of April 22, 1908. The facts were about as follows:

The plaintiffs were the father and mother of a young man some twenty-six to thirty years of age, who was working as a train conductor and yard master for the defendant railroad company on the south side of the island of Porto Rico. At the time of the accident he was in charge of a work train at Lajas station. He had caused the work train composed of flat cars to be moved onto a side track that ran around behind the station. Alongside of this side track a lot of coal was deposited, its front forming a wall very close to the track, so that there was no room between the side of any car and the wall, at least not sufficient to permit a person to stand there without injury when a train was passing. The weight of the evidence at the trial showed that defendant did not have its trains and cars equipped with continuous brakes and automatic couplers such as are

contemplated by national law.   Deceased was endeavoring to
couple two of the flat cars that did not couple by impact.   The
weight of the evidence also appeared to show that he had passed
through from the free side to the coal-wall side of the cars, in
order to take hold of the crank rod that dropped the pin into
the link of the coupling.   It is probable that the engineer started
the cars just after he had done that, and caught him between the
side of the car and the coal wall and squeezed him so badly
that he died eight days thereafter at a hospital.   He was heard
to scream at the time of the occurrence, but nobody actually saw
just how it happened, or at least they said they did not.   Twelve
hours afterwards he told his uncle just how it did happen, but
the court, principally under authority of Travellers' Ins. Co.
v. Mosley, 8 Wall. 397, 19 L. ed. 437, struck that account
of it from the record and took it from the jury, as being a
self-serving declaration made too long after the fact.   How-
ever, there was a lot of other evidence in the case from which the
jury might well have inferred how the accident took place.   See
the court's opinion on the motion for a new trial in this cause,
post, 427, and see also the opinion in Ramirez v. Ponce R. &
Light Co. ante, p. 353.

Other details can be gathered from the instructions of the
court, which RODEY, Judge, gave to the jury as follows:

## Oral Portion.

It is not as easy for the court to instruct you as it is for
counsel to address you.   In every sentence that a judge on the
bench utters to a jury in the way of instructions, he is liable to

err, and even liable to commit reversible error; hence he should measure his words.

This case, while simple in some aspects, is difficult in others. The first national employers' liability act passed by the Congress of the United States in 1906, after decisions both ways upon it in several of the states of the Union, was held unconstitutional by a divided court in the Supreme Court of the United States, by a vote of five to four; hence Congress again proceeded to pass a new national employers' liability act, but made it applicable only to railroads as common carriers. It has already been held by some courts that the former employers' liability act as to other corporations than railroads is still in force in the territories. But that question is not before us here to-day, because this suit is against a railroad and a common carrier. As I stated, it is hard for the court offhand, without any decisions of the higher tribunal to guide it, to instruct you in accordance with the law; however, as the court instructs you, it must be taken as the law for the time being.

You noticed this morning that the court, after mature consideration, or at least some consideration, struck out some evidence. It did so because it ascertained that to leave it to you would have been error, and hence, as stated before, you must not consider the statements of the defendant's station agent made months after the accident, when he pointed out to the civil engineer the place where the accident occurred and the condition of things there at the time of the accident. The railroad station agent was not then under oath, and, at any rate, he had no power at such time to bind the defendant.

I also struck out the alleged statement of the deceased said to have been made to his uncle twelve hours after the accident

Didricksen v. American R. Co.

and at a different place.. I became satisfied from an examination of the rulings of the highest tribunal in the land, that such alleged evidence is not permitted, and hence you will not consider either of the statements referred to.

Now, in some cases, facts speak for themselves, and there is a motto of law a Latin motto, *res ipsa loquitur,*—the facts speak for themselves, as it were, or the things do. But no matter how this may be, facts do not always prove negligence. In this case the man was injured so that he died. That does not of necessity prove the negligence of the defendant.

Another thing I want to call your attention to, before I read to you the regular instructions I have had time to write, is that this is a different sort of a case from one where the person injured bears no relation to the defendant. Some of you sat on a jury the other day where a man was injured while loading cane on cars on a side track. He was not in the employ of the railroad company. He bore no relation to it; he was an outsider. The rule of law in a case like this is entirely different. When the relation is between employer and employee,—which is the better expression to use,—the rule of law, as stated, is entirely different than when a passenger for instance is injured, and negligence is measured by entirely different rules. There is a contract relation in the one case to carry a man as a passenger on the railroad, and to do it safely, and in the other the plaintiff is engaged as an employee and presumably takes such risks as the law does not say he shall not take.

Now, there are accident cases where nobody is culpable of any negligence that resulted in the occurrence. They are known in law as inevitable and unavoidable accidents, and nobody is responsible for them. Such cases can occur. Now, with ref-

Didricksen v. American R. Co.

erence to any criminal side of this case, it is not as it is under the Spanish law, where the criminal action and the civil action are brought together in the same court at the same time, and the civil action carried on with the criminal prosecution. That procedure is entirely eliminated in this court at this time, and probably in the whole island, because the state or the government itself prosecutes separately for any crime connected with an occurrence of this kind, and the plaintiffs have nothing to do in that regard, nor have juries anything to do with it in a civil case, and therefore the law under which you are trying this case is what is known as a compensatory law. The right of action is given to compensate the plaintiffs for any losses that may have accrued to them from the negligence of the defendant.

The additional instructions, that I will now read, will in some measure bring some of those points back to your minds:

This is an action brought by Federico Didricksen and his wife, Luisa Rodriguez, against the defendant, the American Railroad Company of Porto Rico, for damages on account of the death of their son, Pedro Didricksen, which they allege occurred in the latter part of the year, 1908, in this district, on the defendant's railroad, through the negligence, default, and wrongful act of the defendant railroad company. They allege that they are the sole heirs of their said son, as he had neither wife nor children, and that they are his legal representatives under an appointment of a proper surrogate or probate court of this island.

They lay their damages in the sum of $30,000, but you are instructed that there is no evidence in this case that would warrant you in giving any such large sum to them, because, under the law as it will be hereafter quoted to you, the recovery must

be compensatory for the loss sustained, and in this case the evidence is such that the rate of wages which the deceased was capable of earning, or earned, would not authorize you in fixing damages in any such large sum. However, that is a limit beyond which you cannot go, nor, if you find for the plaintiffs, can you award damages in any sum more than what is sufficient to compensate them for the loss they have sustained. And in estimating these damages, you may take into consideration the fact that they are the father and mother of the deceased, and the fact that they are deprived of his society and any care and consideration he might take of them or have for them during his life. You may also take into consideration the character of man that the deceased has been proved to be,—whether he was a good, kind, and helpful son or the contrary, and you may take into consideration his age, his health, his probable duration of life, and his earning capacity, and the amount of his earnings or wages that he contributed towards the plaintiffs' support, and their dependence, if any, upon him, and the time that it shall continue, and the necessity that existed for them to depend on him for such assistance. In other words, the damages you shall award must be purely compensatory, because the law does not permit you to award any "smart money" or punitive damages against the defendant for this unfortunate accident, as there is no evidence in the cause that shows that the same was maliciously brought about.

Now, these statements are made to you for your guidance in case you find from a preponderance of the evidence, under these instructions, that the defendant is liable to the plaintiffs in any sum whatsoever; and if, under the facts as you shall so find them, after the law as given to you in these instructions is ap-

plied to the same, you do not find that the defendant is liable to the plaintiffs at all, then it is your bounden duty, without fear or favor, and eliminating all sympathy and charity from the case, to find for the defendant squarely.

You are instructed that in this sort of a case it is competent for the plaintiffs to show the good character and industrious habits of the deceased, and to show his earning capacity and the amount of money that he contributed to them. And on the other hand, it is competent for the defendant to show the bad or dissolute character of the deceased, if it can truthfully do so, with a view to showing that plaintiffs have not been damaged by the unfortunate occurrence to as large an extent as they claim. And therefore you are not at liberty to resolve any fact or any doubt against the defendant because of the fact that it may, in the course of its defense, have brought persons of confessed dissolute character to testify as to the character of the deceased and the mode in which he spent his money.

You are instructed that this action is brought under the national employers' liability act of April 22, 1908, §§ 2, 3, and 4 of which have some application in this case, and I read them to you as follows:

Sec. 2. That every common carrier by railroad in the territories, the District of Columbia, the Panama canal zone, or other possessions of the United States, shall be liable in damages to any person suffering injury while he is employed by such carrier in any of said jurisdictions, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee,

for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

Sec. 3. That in all actions hereafter brought against any such common carrier by railroad, under or by virtue of any of the provisions of this act, to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: Provided, That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier, of any statute enacted for the safety of employees, contributed to the injury or death of such employee.

Sec. 4. That in any action brought against any common carrier, under or by virtue of any of the provisions of this act, to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier, of any statute enacted for the safety of employees, contributed to the injury or death of such employee. [35 Stat. at L. 65, 66, chap. 149, U. S. Comp. Stat. Supp. 1909, p. 1171.]

You are further instructed that under the act of Congress of March 2, 1893, the national safety appliance act has been extended to the territories, and I instruct you that that includes

Porto Rico, and therefore it was the duty of this defendant to have had continuous brakes and automatic couplings upon its rolling stock, but that fact can have no bearing in this case, unless you shall believe from a preponderance of the evidence that the absence of such safety appliances contributed to the injury or death of the deceased.

Sections 1 and 2 of the safety appliance act in question read as follows:

Sec. 1. That from and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any common carrier engaged in interstate commerce by railroad to use on its line any locomotive engine in moving interstate traffic not equipped with a power driving-wheel brake and appliances for operating the train-brake system, or to run any train in such traffic after said date that has not a sufficient number of cars in it so equipped with power or train brakes that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose.

Sec. 2. That on and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars. [27 Stat. at L. 531, chap. 196, U. S. Comp. Stat. 1901, p. 3174.]

You are further instructed that it is the duty of every employer, whether a common carrier or not, to afford a reasonably safe place for his or its employees to work in and to furnish them

with reasonably safe appliances to work with. In this partic-
ular case, if you shall believe from a preponderance of the
evidence that the accident in question occurred because of the
nearness of the wall of chunks of coal to the railway track, so
that it did not afford sufficient room for the help attending the
trains to pass between it and the sides of the cars, then you are
instructed that it was negligence for the railroad company to
have put and left that wall of coal in such dangerous and neg-
ligent position; but if you further believe that such wall of coal
was in plain sight, and the fact that there was not room for him
to pass between the cars and it was, or could have, or ought to
have, been known by him when he saw it, then he took the risk
of going between the cars and such wall of coal, and his own
negligence in doing so is·the proximate cause of his injury, and
neither he nor his representatives can recover in this case; pro-
vided that you further believe from a preponderance of the
evidence that the defendant did not have the continuous brakes
and automatic couplers provided for by the act of Congress, and
that the absence of the same necessarily made this man go in
such dangerous position between the cars, and that he could not
have seen the danger openly before him at that time.

You are further instructed that if you shall believe from a
preponderance of the evidence that the defendant did not have
upon its said cars the safety appliances provided for by the act
of Congress, and that it was necessary for the deceased to go
between the cars to couple them, then the plaintiffs are entitled
to·recover, unless you further believe that going into such posi-
tion was so dangerous as that the deceased could see it and be
aware of it at the time he made the attempt to couple the cars,
and that he had plenty of time and opportunity to avoid the
danger had he so desired.

Didricksen v. American R. Co.

You are further instructed that if you shall believe from a preponderance of the evidence that this accident occurred because of the locomotive engineer starting the train while the deceased was between the cars, then such negligence is the neglignce of a fellow servant, and the defendant is ordinarily not liable therefor to the heirs or representatives of the deceased, unless the necessity for his so going between the cars was brought about by a failure of the defendant to have upon its cars the safety appliances provided for by the act of Congress.

Thus, you can see that you must determine, from a preponderance of the evidence, at what place the accident really occurred, whether between the cars by the drawheads or bumpers striking the deceased, or at the side of the cars by his being crushed between the car and the wall of coal, and how the deceased was injured; and the burden of proving all these facts is upon the plaintiffs, and unless they show that the accident occurred through the negligence of the defendant, they are not entitled to recover.

If the accident occurred through the failure of the defendant in not having the safety appliances provided for by the act of Congress on its cars, then the deceased cannot be held to have assumed the risks of his employment, if such negligence of the defendant contributed to the injury in any way.

In any event, even though you may believe that the deceased has been guilty of contributory negligence, that fact will not bar a recovery, but the damages which you can award must be diminished in proportion to the amount of negligence attributable to the deceased, and in accordance with the rest of these instructions.

Therefore, if you find from a preponderance of the evidence

on the whole case that the deceased was guilty of some contributory negligence, but that the defendant was also guilty of negligence, then you must still find for the plaintiffs, but you must diminish the damages as indicated. The only exception to this is that if you find from a preponderance of the evidence, as stated, that the injury to the deceased occurred by the narrowness of the passage between the side of the car and the wall of coal, and that deceased was guilty of contributory negligence in putting himself in that dangerous position with the danger in sight directly before him, then the plaintiffs cannot recover at all, because the deceased's own negligence was the proximate and only cause of his injury, and neither he nor anyone for him is entitled to recover.

You are further instructed that if you believe from a preponderance of the evidence that the defendant had the safety appliances provided for by the act of Congress upon its cars at the time, and that it was unnecessary for the deceased to place himself in the dangerous position between the ends of the cars, provided you believe that the accident occurred there, then the deceased assumed the risk incident to that dangerous position, and he assumed the risk of his fellow servant, the engineer, in starting the train at a time when it was dangerous to do so, and you should find for the defendant.

Additional oral instructions were then delivered to the jury from the bench, after the reading of the written instructions as aforesaid.

You are the sole judges of the weight of the evidence and of the credibility to be given to any particular witness, and you can believe or disbelieve the whole or any portion of the evidence of any person who has testified in the cause. The court desires to

Didricksen v. American R. Co.

warn you that in this sort of a case you must consider it in that calm spirit which impartial people always do. On the one hand you must not permit the plaintiffs to make a speculation of the suit. And on the other hand, you must not stand up so straight as to lean over backwards against the rights of these plaintiffs in the premises, and doing this, you will have done complete justice between the parties.

The court will give you two forms of verdict; one reading: We, the jury, find for the plaintiffs and assess their damages at the sum of blank dollars (the amount is in your discretion, should you find for the plaintiffs, and hold that the defendant is liable), in such sum as you believe to be right and just. The other form will read: We, the jury, find for the defendant. And if you find that way, that will end the case.

You should not in this case permit your sympathy to affect you in the least in your deliberations; and on the other hand, you sholud not allow plaintiffs to profit by your verdict. You can only compensate them. But you should, to the best of your ability, consider all the facts and circumstances of the case in arriving at a verdict. You should also deliberate together and give reasons to each other for the opinions you have, and if some of you find that you are wrong, change your opinions and agree with the others, so that you may arrive at a verdict. These trials are expensive, both to the government and to the parties, and it has to go back upon the docket again in case you do not agree upon a verdict, and we have to go through the trial again at another term of court. However, nothing that is here said to you is intended to influence you one jot in your verdict, or to cause any of you to give up your opinions to other jurors if you believe that injustice would supervene by so doing.

Didricksen v. American R. Co.

You should not permit your acquaintance with the counsel on either side, or your lack of acquaintance with either of them, to affect you in your verdict. Neither should you allow the riches or the property of the parties, or the fact that one is an individual and the other a corporation, to have as such the least weight in your deliberations or in your verdict. Whenever jurors permit that to be done, the administration of justice becomes a farce.

You should not permit yourselves to enter into the enthusiasm or excitement of counsel for one side or the other, but you should consider the cold facts as testified to on the stand, and apply the law as here given you, and decide the case on a preponderance of the evidence.

A preponderance of the evidence is a peculiar thing. It does not necessarily mean the side that has the more witnesses or the more exhibits, or that sort of thing; it means simply the side that looks the more reasonable and that in your opinions has the truth with it, after a full, fair, and impartial consideration of all the facts and circumstances of the case. Treating the case in that way, you will have the best chance to do justice.

You may take with you the forms of verdict the court prepared, the complaint, the answer, and the exhibits, such as maps and other things put in evidence. Nobody but yourselves is responsible for your verdict. Neither counsel nor the parties have any right to question you for it. When you have performed your duty, we all will have to abide by it. If the court has erred in any of its rulings or instructions it will later hear a motion for a new trial and correct itself, but the facts you must now decide, and under these instructions render a verdict; and in that light the cause is submitted to you.

The verdict was for the plaintiffs in the sum of $6,000.